IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M., et al., | No. C 10-04223 SI |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE, AND DENYING DEFENDANTS' MOTION FOR SANCTIONS** |
| v. | |
| LAFAYETTE SCHOOL DISTRICT, et al., | |
| Defendants. | |

On February 25, 2011, the Court heard argument on defendants' motion to dismiss and/or strike and defendants' motion for sanctions. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion to dismiss and/or strike and DENIES defendants' motion for sanctions. Any amended complaint must be filed **by March 21, 2011.**

**BACKGROUND**

This action, brought under the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act, concerns a dispute over the educational opportunities provided to C.M., a child who has been identified as an individual with learning disabilities. It is the third of three lawsuits filed in the wake of two administrative due process hearings. M.M. and E.M., individually and on behalf of their son C.M., are suing the Lafayette School District ("District") and the Lafayette School Board ("School Board").

The District conducted an initial psychoeducational assessment of C.M. in April 2007. In September 2008, M.M. and E.M. requested an independent educational evaluation ("IEE") of C.M.

Several months later, in December 2008, the District filed a complaint ("2008 OAH Case") requesting a due process hearing before the Office of Administrative Hearings ("OAH") in order to determine the validity of its April 2007 assessment, determine whether it was liable to reimburse C.M.'s parents for the IEE, and determine whether it had a right to conduct its own reassessment of C.M. After holding a hearing, the ALJ issued a decision on July 1, 2009, finding that the parents were entitled to reimbursement of half the expenses associated with the IEE and that the District had a right to proceed with a new assessment because the ALJ concluded that C.M.'s parents were entitled to reimbursement for the IEE in any event. This decision forms the basis of plaintiffs' complaint in *M.M., et al. v. Lafayette School District, et al.*, No. 09-4624 SI ("2008 OAH Appeal").

Meanwhile, on April 16, 2009, C.M. filed an administrative complaint ("2009 OAH Case") requesting a separate due process hearing to address (1) whether the District timely identified and evaluated C.M. for possible disabilities, (2) whether the District's April 2007 assessment was appropriately conducted and identified all of C.M.'s educational needs, and (3) whether the individualized education program ("IEP") formulated as a result of the April 2007 assessment was developed and maintained in accordance with IDEA mandates. On May 13, 2009, a different ALJ determined that the first two categories of claims were time-barred and granted the District's motion to dismiss those claims. The ALJ's dismissal order forms the basis of plaintiffs' complaint in *M.M., et al. v. Lafayette School District, et al.*, No. 09-3668 SI ("2009 OAH Interim Appeal").

On August 28, 2009, C.M. filed another complaint with OAH, which was consolidated with the pending 2009 OAH Case. On June 21, 2010, a third ALJ issued a decision in favor of the District on all issues in the consolidated due process hearing. *See* First Am. Compl., Ex. 1 at 48. This decision forms the basis of plaintiffs' complaint in the case at bar, *M.M., et al. v. Lafayette School District, et al.*, No. 10-4223 SI ("2009 OAH Final Appeal").

On June 2, 2010, the Court granted the District's motion to dismiss the 2009 OAH Interim Appeal without prejudice to refiling once the ALJ has issued a final decision in the underlying

administrative proceedings.[1] Case 09-3668 SI, Doc. 53. Plaintiffs have since appealed the that order to the Ninth Circuit Court of Appeals.

On December 6, 2010, the Court granted in part a motion to dismiss the 2008 OAH Appeal filed by the District, the School Board, and several other defendants. The Court dismissed with prejudice two claims that alleged violations of IDEA procedural safeguards in connection with specific actions allegedly taken by the District, because the IDEA does not provide a private right of action to enforce these procedural safeguards outside of an administrative hearing and appeal of an administrative determination. Case 09-4624 SI, Doc. 83, 4–6. The Court also dismissed with prejudice a procedural due process claim brought under Section 1983, granted the District's motion to strike plaintiffs' request for expert fees, and dismissed certain claims against another defendant not named in this case. *Id.* Still remaining in the case are plaintiffs' appeal of the 2008 OAH decision, plaintiffs' request for attorney's fees, and a claim against the District and the School Board for retaliation under Section 504 of the Rehabilitation Act.

The operative complaint in this case, the 2009 OAH Final Appeal, is plaintiffs' First Amended Complaint ("FAC"), filed October 22, 2010. Doc. 4. The FAC brings six claims for relief against all defendants. The first is for reversal of the ALJ's dismissal order in the 2009 OAH Case finding certain claims time-barred, which initially was the claim brought in the 2009 OAH Interim Appeal, Case 09-3668 SI. The second is for reversal of the final ALJ order in the 2009 OAH Case. The third is for attorneys fees and costs. The fourth is for violations of IDEA procedural safeguards. The fifth is a retaliation claim brought under Section 504 of the Rehabilitation Act. And the sixth is a discrimination claim brought under Section 504 of the Rehabilitation Act.

On December 14, 2010, the Court consolidated the 2008 OAH Appeal and the 2009 OAH Final Appeal. Doc. 10. On February 14, 2011, the Court appointed M.M. and E.M. as guardians ad litem for C.M. Doc. 22.

Currently before the Court are defendants' Motion to Dismiss and/or Strike Plaintiffs' First Amended Complaint, doc. 12, and defendants' Motion for Sanctions, doc. 11.

---

[1] The Court also dismissed the claims against several defendants who have not been named in the 2009 OAH Final Appeal.

3

**LEGAL STANDARD**

**I.     Motion to dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Where a complaint duplicates another pending related action, a trial court has discretion to dismiss the new complaint. *See Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1577 (Fed. Cir. 1991); *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985). Similarly, where "more than one lawsuit is instituted for a single cause of action, the cause of action is said to have been split," and the trial court "has the discretion to order consolidation" or to dismiss "where other factors make it inconvenient or inappropriate to consolidate." *In re Wilson*, 104 B.R. 303, 304 (Bankr. E.D. Cal. 1989).

**II.    Motion to strike**

Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or upon a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing of those issues before trial. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). However,

4

motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

### III. Motion for sanctions

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who . . . multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Imposition of costs under this statute requires a finding of recklessness or bad faith on the part of the attorney sanctioned. *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).

Additionally, a court has the inherent authority to sanction parties for bad faith conduct in the course of litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). This authority is independent of, and not constrained by, statutory sources of authority for imposing such sanctions. *See id.* at 50. In order to sanction a party pursuant to this inherent authority, a court must find that the party acted in bad faith. *See Primus Auto. Fin'l Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). Bad faith means that the party or attorney acted "vexatiously, wantonly, or for oppressive reasons." *Id.* "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Bad faith can also consist of "delaying or disrupting the litigation." *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978).

### DISCUSSION

Defendants move to dismiss claims four, five, and six of plaintiffs' First Amended Complaint. They also move for sanctions.

## I. Defendants' Motion to Dismiss and/or Strike

### A. Fourth Claim: Violations of IDEA procedural safeguards

In their Fourth Claim for Relief, plaintiffs allege that defendants "violated their statutory duty to establish and maintain policies and procedures to ensure that Plaintiffs' IDEA procedural safeguards are provided" in a variety of ways. *See* FAC ¶ 220. For example, plaintiffs allege that defendants interfered with "their rights to obtain an independent educational evaluation as authorized by the IDEA"; "failed to follow board policies for responding to a parent's request for an IEE when Plaintiffs requested an IEE and instead sought to obstruct, discourage and prevent CM from receiving the IEE to which he was entitled"; "refused to acknowledge Plaintiffs' IEE request as proper under the IDEA"; "implemented a series of facilitated IEP team meetings and used the meetings in an effort to coerce CM's parents into abandoning their IEE request"; "submitted its written request to the California Department of Education requesting CDE to stay its investigation"; sought "the suspension of CDE's investigation intending to compel a reevaluation of CM in violation of the IDEA"; and "engaged in a pattern and practice of discouraging parents of disabled students from advocating for their child's IDEA rights and appropriately seeking an IEE." FAC ¶¶ 215–22. According to plaintiffs, this is a violation of 20 U.S.C. §§ 1412(a) and 1415(a).

In dismissing similar claims in the 2008 OAH Appeal, the Court said the following:

> Plaintiffs argue that 20 U.S.C. § 1415(i)(2) provides an express right of action for plaintiffs to bring this claim. It does not. Section 1415(i)(2) permits suit by parties aggrieved by findings and decisions made under Subsections (f), (k) and (i) of Section 1415, not under Subsections (a) and (b). Plaintiffs argue that Section 1415(i)(2) must provide an express right of action to enforce Subsections (a) and (b) (as interpreted by 34 C.F.R. § 300.502(b)(2)(i)), because otherwise "§ 1415 procedural safeguards necessary for a FAPE would be illusory." Opp. Br. 5. The Court disagrees. Plaintiffs say that they already challenged [defendants'] response to their request for an IEE at the due process hearing. *See* SAC ¶ 74. Plaintiffs are entitled to seek review of the ALJ's decision at the due process hearing. And in fact, in seeking review of the ALJ's decision in claim one in this case, plaintiffs raise their concerns over the Lafayette defendants' response to their IEE request. *See* SAC ¶ 96.
> Next, plaintiffs argue that IDEA grants them an implied right of action to enforce IDEA procedural safeguards. Plaintiffs cite no case recognizing an implied right of action to enforce provisions of the IDEA. Nor would recognition of an implied right of action be consistent with 20 U.S.C. § 1415, the very section of the IDEA cited by plaintiffs, which explicitly requires parents to raise concerns in administrative hearings and then provides an express right of action for review of the administrative determinations. *See Cannon v. University of Chicago*, 441 U.S. 677, 688 n.9 (1979) (discussing factors for determining whether a statute provides for an implied right of action).

6

Case 09-4624, Doc. 83 at 4–5.

The same general logic prevents plaintiffs from raising claims under Section 1412. Section 1412 discusses the policies and procedures that a state is required to have in effect in order for the state to be eligible for assistance under the IDEA for any fiscal year. 20 U.S.C. § 1412(a). The statute specifically assigns the Secretary of Education the determination of whether a state is eligible to receive a grant under the IDEA. *Id.* § 1412(d)(1). There is no indication in the statute that it provides parents with a private right of action, and there is no reason to think that it is necessary to allow parents to have a separate cause of action where they are already permitted to bring a direct appeal of the results of any due process hearing.

Plaintiffs acknowledge that the reasoning the Court's Order in Case 09-4624 applies in this case. They explain that they are maintaining the claim only in order to ensure that a complete record is kept in this case and to preserve their rights on appeal. Therefore, the Court DISMISSES WITH PREJUDICE plaintiffs' Fourth Claim for Relief.

### B. Fifth Claim: Retaliation under Section 504 of the Rehabilitation Act

In their Fifth Claim for Relief, plaintiffs allege that defendants "engaged in unlawful retaliation in violation of § 504 of the Rehabilitation Act" by (1) "seeking to compel a reevaluation of CM by District" in order "to prevent Plaintiffs from obtaining the IEE for CM as authorized by the IDEA"; (2) "seeking and obtaining closure of Plaintiffs' CDE [California Department of Education] compliance complaint through false statements to CDE"; and (3) "requiring Plaintiffs to engage in a series of facilitated IEP team meetings and using those meetings to coerce CM's parents into abandoning their IEE request." FAC ¶¶ 223–26.

The Court denied defendants' motion to dismiss a Section 504 retaliation claim in the 2008 OAH Appeal. Defendants now argue that the claim should be dismissed in this case because (1) the claim was not exhausted administratively and (2) an identical claim is raised in the 2008 OAH Appeal. Plaintiffs argue that the claim is as exhausted as it needs to be. They also acknowledge that they have raised "concurrent claims for retaliation . . . in both cases." Pl. Oppo. at 13. They argue, however, that since

the 2008 OAH Appeal and the 2009 OAH Appeal have been consolidated, defendants are not prejudiced by the survival of concurrent claims; and because it is not clear whether the claims are better heard as part of the 2008 OAH Appeal or the 2009 OAH Appeal, plaintiffs in fact would be prejudiced by the dismissal of the retaliation claim in this suit.

### 1.  Exhaustion

Defendants argue that this claim should be dismissed in any event, because none of the three theories cited by plaintiffs was "ever presented to OAH as [a] retaliation claim[]." Def. Mot. at 14.

The precursor statute to the IDEA—the Education of the Handicapped Act—was once understood to be such a "comprehensive scheme . . . to protect the right of a handicapped child to a free appropriate public education" that it displaced private rights of action (and accompanying remedies) otherwise available under the Rehabilitation Act and a variety of other statutes. *See generally Smith v. Robinson*, 468 U.S. 992 (1984). No longer. Congress has now clarified that

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, Title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [state and local due process hearing] procedures . . . shall be exhausted to the same extent as would be required had the action been brought under this part.

20 U.S.C. § 1415(l).

In *Robb v. Bethel Sch. Dist.*, 308 F.3d 1047 (9th Cir. 2002), the Ninth Circuit explained that the

> primary concern in determining whether a plaintiff must use the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy requested. The dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary. Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem.

*Id.* at 1050.

In the 2008 OAH Case, plaintiffs responded to the District's request for a due process hearing by arguing that the District "improperly filed" its 2008 OAH "hearing request to halt the CDE investigation and prejudice [C.M.'s] substantive due process rights to an IEE." Foltz Decl. Ex. 2 at 1–2.

8

They also said that "the District seeks reassessment only in response to [C.M.'s] request for an IEE and to contest the independent neuropsychological assessment that began before the District requested this due process hearing." *Id.* at 2. They state that "[t]he District has not identified conditions that warrant reassessment" and point out that in the District's hearing request the *District* asserted "that reassessment is necessary only because [C.M.'s] parents requested an IEE." *Id.* They explained their theory that "[t]he District filed for due process seeking assessment pursuant to a defective and outdated assessment plan to avoid its obligation for funding the assessment which it knew was underway" and that the District's delay "was unnecessary and prejudicial." *Id.* at 3.

To the extent that plaintiffs were required to exhaust the first two bases for their retaliation claim at the IDEA hearings, they did so. As the Court explained previously, the elements of a Section 504 Retaliation claim are: a protected activity; knowledge of the protected activity; adverse action; and a causal connection between the protected activity and adverse action. Plaintiffs raised concerns related to each element. The ALJ and defendants were on notice of plaintiffs' theories, even though plaintiffs did not use the word "retaliation" in the 2008 OAH Case.[2]

Separately, it appears that plaintiffs exhausted their first retaliation theory in their supplemental filings to the 2009 OHA Case. Plaintiff argued there that "The procedure of allowing an administrator to unilaterally seek reassessment with a supporting IEP team determination that reassessment was warranted violated IDEA and was unlawful retaliation for parents' request for an IEE and assessment in areas of speech and language, motor function, binocular vision, and assistive technology." Foltz Decl. Ex. 4 at 3; *see also id.* at 5 ("The assessment plan was not developed through the IEP process and was retaliatory for [C.M.'s] parents' IEE request and challenge fo the sufficiently of [C.M.'s] IEP at the September 17, 2008 team meeting.").

However, plaintiffs have not exhausted their third retaliation theory, that the District "requir[ed] Plaintiffs to engage in a series of facilitated IEP team meetings and us[ed] those meetings to coerce CM's parents into abandoning their IEE request." The basis of this claim—that the District "us[ed]

---

[2] This case is distinguishable from *JG v. Douglas County School Dist.*, 552 F.3d 786 (9th Cir. 2008), where the school district "had *no notice* that Appellants considered the . . . placement discriminatory." *Id.* at 803 (emphasis added).

9

those meetings to coerce CM's parents into abandoning their IEE request"—was not before the ALJ, and therefore plaintiffs may not allege it in Court. *See JG*, 522 F.2d at 803.

### 2. Concurrent claims

Defendants move to dismiss on separate grounds. They argue that an identical claim to plaintiffs' second Rehabilitation Act/retaliation theory (retaliation by "seeking and obtaining closure of Plaintiffs' CDE compliance complaint through false statements to CDE") has already been dismissed with prejudice in the 2008 OAH Appeal, and thus it may not be realleged here. They also argue that an identical claim to plaintiffs' first Rehabilitation Act/retaliation theory (retaliation by "seeking to compel a reevaluation of CM by District" in order "to prevent Plaintiffs from obtaining the IEE for CM as authorized by the IDEA") has survived in the 2008 OAH Appeal, and that it should not remain in both cases.

Regarding the CDE-retaliation theory, defendants are incorrect. Defendants argue that the claim was raised in plaintiffs' fourth cause of action in the 2008 OAH Appeal, which the Court dismissed with prejudice. Plaintiffs did claim that defendants improperly closed plaintiffs' CDE compliance complaint, but that claim was brought under IDEA and the U.S. Constitution only, and it was dismissed on that basis. *See* Case 09-4624 SAC ¶¶ 122–31; Case 09-4624 Order, Doc. 83, at 5:20–6:2; 8:9–9:12. Here, plaintiffs claim that the improper closing of plaintiffs' CDE compliance complaint was a retaliatory measure. This is a different claim.

Regarding the reevaluation-retaliation theory, plaintiffs acknowledge that the claim is the same as a claim made in the 2008 OAH Appeal, where that claim has survived. However, the Court does not find it proper to dismiss the claim from this case in that basis. Because the 2008 OAH Appeal is of a due process hearing initiated by the school, and the 2009 OAH Final Appeal is of a due process hearing initiated by the student and his family, there is the potential for complicated questions to arise related to exhaustion. It is not clear whether this claim is better made in the 2008 OAH Appeal or the 2009 OAH Final Appeal, and plaintiff may suffer undue prejudice if the Court dismisses the claim from one of the cases at this time. Because the two cases are already consolidated, however, defendants bear only a minimal burden in having the claim survive in both cases at this time.

Therefore, the Court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss plaintiffs' Fifth Claim for Relief. Plaintiffs are not permitted to pursue their third theory, regarding forced engagement in IEP team meetings. Plaintiffs are permitted to pursue their first two theories, regarding compulsory reevaluation and closure of the CDE complaint. As plaintiffs acknowledge, they will not be permitted to recover in both cases on the same theory.

**C.     Sixth Claim: Discrimination under Section 504 of the Rehabilitation Act**

In their Sixth Claim for Relief, plaintiffs allege that defendants violated Section 504 of the Rehabilitation act by discriminating against C.M., and in particular by failing "to address CM's educational needs as adequately as the needs of non-disabled students were met." FAC ¶¶ 227–234.[3]

Defendants argue that this claim should be dismissed because (1) the claim was not exhausted administratively; (2) plaintiffs have failed to state a claim because (a) the discrimination charge is essentially a reallegation of plaintiffs' IDEA claims and therefore is not properly raised under Section 504 and (b) it is the regulations to Section 504, rather than Section 504 itself, that would provide plaintiffs any claim; and (3) plaintiffs M.M. and E.M. cannot bring this claim.

Disabled students are guaranteed a free appropriate public education ("FAPE") both by the IDEA and by the Rehabilitation Act's implementing regulations. However, the FAPE is different under each statute. "The most important differences are that, unlike FAPE under the IDEA, FAPE under § 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the 'design' of a child's educational program." *Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008).

"To assert discrimination in the education context, 'something more than a mere failure to provide the [FAPE] required by [the IDEA] must be shown.'" *J.W. v. Fresno Unified Sch. Dist.*, C 07-1625, 2008 WL 5329946 (E.D. Cal. Dec. 19, 2008) (quoting *Sellers by Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 529 (9th Cir.1998)). That is to say, "Plaintiffs who allege a violation of the FAPE requirement contained in [Section] 504 regulations . . . may not obtain damages simply by

---

[3] Plaintiffs raised a Section 504 Discrimination claim in the 2008 OAH Appeal, but it was based on different factual allegations than the discrimination claim here.

11

proving that the IDEA FAPE requirements were not met." *Mark H.*, 513 F.3d at 933.

This exhaustion requirement can leave certain plaintiffs in a bind. On the one hand, they must allege something *more* than denial of an IDEA FAPE; on the other hand, they must have exhausted that *more* in the administrative proceedings. Here, plaintiffs make clear in their FAC that they are alleging something more than denial of an IDEA FAPE—they are alleging additionally that C.M.'s educational needs were not being met "as adequately as the educational needs of nondisabled students were met"; and that the district failed "to develop an IEP that included necessary accommodations to enable CM to access his education and participate in the general education curriculum at his ability level with his non-disabled peers." FAC ¶¶ 228, 229, 233. Additionally, at least in the 2009 OAH Case, they put the District on notice during the administrative proceeding that they were arguing that C.M. was not provided with a *Rehabilitation Act* FAPE, and not merely that C.M. was not provided with an IDEA FAPE: "Throughout the 2007-2008 school year, including ESY in summer 2008, and the 2008–2009 school year, District also failed to develop a '§ 504 plan,' pursuant to § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)." Foltz Decl. Ex 4 at 2. This, in combination with the extensive factual allegations in the 2009 OAH Case, is sufficient under *JG* for exhaustion purposes. *See* 522 F.2d at 803.

Defendants argue that, even if plaintiffs have exhausted a Section 504 claim, they have not actually *stated* one in their FAC. They argue that the Ninth Circuit requires a plaintiff wishing to bring a Section 504 FAPE claim specifically to identify the regulation that he is relying on to bring his claim. *See Mark H.*, 513 F.3d at 935–39. In *Mark H.*, the Ninth Circuit said that whether a family "can bring an action to enforce the § 504 regulations . . . depend[s] on whether those regulations come within the § 504 implied right of action."

The District of Hawaii analyzed the holding in *Mark H.* in depth in *Wiles v. Department of Educ.*, 555 F. Supp. 2d 1143 (D. Hawaii 2008). The *Wiles* court distinguished cases challenging the "design" phase of FAPE from those challenging actual "implementation." It concluded that plaintiffs raising "design" phase challenges needed to cite specific regulations that (1) were violated and (2) fell sufficiently within Section 504's implied right of action. In contrast, plaintiffs challenging "implementation" of a FAPE brought a claim within the statute and therefore did not need to cite regulations. The Court finds the careful analysis in *Wiles* persuasive and adopts it in this case.

12

Here, like in *Mark H.*, and unlike in *Wiles*, plaintiffs are challenging the design phase. Claim six specifically alleges that defendants failed to "address[]" certain needs and to "develop an IEP that included necessary accommodations." FAC ¶¶ 228–29. The court in *Mark H.* "offered the H. family an opportunity to amend its complaint to assert which § 504 regulations involving the design phase had been violated and which support a privately enforceable cause of action." *Wiles*, 555 F. Supp. 2d at 1156. The Court here will do the same for plaintiffs.[4]

Therefore, the Court DISMISSES plaintiffs' Sixth Claim for Relief, with leave to amend.

### D. Factual allegations

Defendants also move to strike what they call "duplicative allegations." They identify 33 paragraphs from the FAC in this case that they say are duplicative of allegations in the SAC in the 2008 OAH Appeal and are therefore "unnecessary and irrelevant here." Plaintiffs argue that the paragraphs should not be stricken because they provide important context to causes of action that are not duplicative.

The Court agrees with plaintiffs. Of these paragraphs, twenty are background factual allegations, one is an allegation that is part of plaintiffs' first claim for relief, and twelve are part of plaintiffs' second claim for relief. The first and second claims for relief are plaintiffs' direct appeal of the results of the 2009 OAH Case. The 2008 OAH Appeal is an appeal of the results of the 2008 OAH Case. Thus, the Court is not concerned that the paragraphs are redundant or immaterial, or that they are pled in support of spurious issues. *See Fantasy*, 984 F.2d at 1527. Defendants' motion to strike these paragraphs is DENIED.

## II. Motion for Sanctions

Defendants request sanctions in the amount of $17,176.50 "for having to move to dismiss and/or strike claims that have already been dismissed by this Court at least once, and claims that are already

---

[4] Because it is not necessary to the Court's analysis, and because C.M. also wishes to bring a Section 504 FAPE claim, the Court will not reach the question of parental standing to bring a Section 504 FAPE claim at this time.

pending in another action." Plaintiffs conduct has not been unreasonable, and the Court will not award sanctions. Defendants' motion is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion to dismiss and/or strike. (Doc. 12.) Plaintiffs' Fourth Claim for Relief is dismissed with prejudice. Regarding plaintiffs' Fifth Claim for Relief, plaintiffs' first and second theories survive, but plaintiffs may not rely on their third theory, relating to forced engagement in IEP team meetings. Plaintiffs' Sixth Claim for Relief is dismissed, with leave to amend per the requirements of *Mark H.* The Court will not strike the additional paragraphs that defendants wish stricken. Any amended complaint must be filed **by March 21, 2011.**

The Court DENIES defendants' motion for sanctions. (Doc. 11.)

**IT IS SO ORDERED.**

Dated: March 3, 2011

SUSAN ILLSTON
United States District Judge