LINA FOLTZ, Attorney-At-Law, (SB# 167813)
11 Embarcadero West, Suite 230
Oakland, California 94607
Telephone: [510] 663-7199
Facsimile: [510] 444-8102

Attorney for Plaintiffs M.M., E.M. & C.M.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| M.M. & E.M., individually and on behalf of their minor son C. M.,<br><br>Plaintiffs,<br><br>vs.<br><br>LAFAYETTE SCHOOL DISTRICT, a Local Educational Agency and LAFAYETTE BOARD OF EDUCATION,<br><br>Defendants. | Case No. C10-04223 SI (Consolidated with C09–04624 SI)<br><br>**PLAINTIFFS' REPLY RE: MOTION TO SUPPLEMENT THE RECORD** (Declaration of Lina Foltz filed concurrently Under Seal)<br><br>**20 U.S.C. § 1415(i)(2)(ii); FRCP, Rule 7(b)**<br><br>Date: October 14, 2011<br>Time: 9:00 a.m.<br>Room: Courtroom 10, 19th Floor<br><br>Complaint filed: September 17, 2010<br>1ST Amended Complaint filed: October 22, 2010 |

Plaintiff M.M. and E.M., individually and on behalf of their minor son C.M. (collectively, Plaintiffs), REPLY hereby to Defendants' Opposition to Motion to Supplement the Administrative Record.

## I. SUMMARY OF ARGUMENT

The issues raised by Plaintiffs in the administrative hearing underlying this case concern separate issues, from those raised by the Lafayette School District (LSD) in its administrative complaint underlying consolidated case C09-04624 SI, and one common to both cases - whether the school LSD's initial evaluation satisfied IDEA requirements. However, the time frames overlap and material facts are common to both cases. Therefore, consideration of the proposed supplemental evidence and pertinent documents from each administrative hearing is entirely consistent with careful review of the administrative decision.[1]

[1] The ALJ in case C09-04624 SI took official notice of the record of Plaintiffs' subsequent administrative case at the time of his decision. And, the ALJ here reviewed the prior ALJ's decision.

Substantial justice, served by truth and accuracy, would be obstructed by isolating material evidence presented in the two administrative cases, and excluding it in the pertinent, related portion of each case.[2] The Defendants have had every opportunity to respond to all of the evidence presented in the two hearings, most of which, it created. The Court should take judicial notice of prior administrative record underlying the Defendants' case C09-04223 SI and the other evidence as requested by Plaintiffs. No injustice arises from the Court's consideration of Plaintiffs' proposed additional evidence to reach its decision. Supplementation also serves judicial economy of reaching a final decision of the issues raised here.

## II. <u>THE EVIDENCE IS ADMISSIBLE BY FACIAL AUTHENTICATION</u>

Defendants contend that the proposed documents are not sufficiently authenticated. (Opp. p. 920-22). Federal Rule of Evidence 901 states that authentication as a condition of admissibility "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R.Evid. 901. Distinctive characteristics, contents, substance and other distinctive characteristics and circumstances are sufficient to authenticate each of the documents that Plaintiffs offer for supplementing the record. Here, each document is authenticated by content.[3]

## III. <u>LIMITED DEFERENCE IS APPROPRIATE HERE & SUPPORTS SUPPLEMENTING THE RECORD</u>

The ALJ's findings here warrant less deference, in part, because his findings were based upon improperly delimited issues and a narrowed time-frame that excluded relevant evidence, including evidence regarding the LSD's conduct and knowledge of CM's needs prior to his initial IEP team meeting.

The ALJ in this case did not conduct a hearing on whether LSD's initial evaluation satisfied the IDEA. (ARII 409).[4] The ALJ set forth Plaintiffs' contentions beginning at the time of CM's initial IEP Team

---

(TRII 519:6-521:4; TRII 545:17-546:22).

[2]Defendants suggestion that the Court might selectively admit parts of the prior administrative record would require time consuming and wasteful pre-sorting burden for the parties and the Court. Limiting use of the record can be accomplished efficiently by citing to relevant parts of the records.

[3] Defendants also argue that Plaintiffs "never subpoenaed additional documents if they though documents were not provided" and have not established good cause to supplement the record. (Opp. p. 3:16-20). Good-cause is not required and the LSD did not disclose that it withheld the records.

[4]The ALJ stated the Issues: "I. Did District deny Student a [FAPE] from March 18, 2007, through March 18, 2008? II. . . . March 18, 2008 through March 16, 2009? III. . . . March 16 2009 through June 2009? IV. Must District make reimbursement or provide compensatory education to Student?"

meeting on April 18, 2007.[5] The ALJ's issues began with Plaintiffs' allegations that necessary members did not attend CM's initial IEP meeting and that LSD failed to provide necessary and accurate information about CM's needs, including his response to intervention (RTI). (ARII 409). The ALJ identified Plaintiffs' factual claims that LSD failed to appropriately assess CM after his initial IEP team meeting and evaluation as CM struggled at school without success. (ARII 410). None of the cited allegations or issues included whether the school district's initial evaluation was appropriate or the question of when LSD first notified CM's parents of their IDEA rights to procedural safeguards to trigger accrual of the statute of limitations. (ARII 409-412). Therefore, consideration of additional evidence presented in the prior administrative hearing is appropriate and does not conflict with giving careful consideration of the ALJ's findings.

Further, the Ninth Circuit adopts the First Circuit's "asymmetrical approach" regarding the deference to be accorded to administrative findings under the IDEA. *Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984). This asymmetry properly assigns less weight to a decision in favor of the educational agency. Although "careful" consideration must be given to administrative findings, findings are accorded less deference when the administrative decision favors a school district. *Town of Burlington* at 792.

The questions of law raised in this action are subject to *de novo* review. Therefore, many of the ALJ's findings must be carefully considered in light of the IDEA's statutory language and corresponding requirements. The ALJ's findings should be rejected to the extent they are inconsistent with the plan statutory meaning of the IDEA statutory provisions.

For example, the ALJ found that LSD was not required to provide RTI data to Plaintiffs because RTI was not basis for the IEP team determining that CM qualified for special education services under the category of specific learning disability. (ARII 425, ¶ 2). However, the IDEA does not condition the requirement for districts to provide documentation of RTI at the IEP meeting to determine eligibility. 20 U.S.C.A. § 1414(b); 34 C.F.R. § 300.311[6]. The ALJ acknowledged that the LSD compiled, discussed and

---

[5]"District: A. Failed to ensure the attendance of necessary and qualified District staff; B. Failed to provide necessary and accurate information about Student's needs, including his response to an intervention (RTI); . . . ." (ARII 409).

[6]"For a child suspected of having a specific learning disability, the documentation of the determination of eligibility, . . . must contain a statement o f– . . . (7) If the child has participated in a process that assesses the child's response to scientific, research-based intervention– (i) The instructional strategies used and the student-centered data collected . . . ." 34 C.F.R. 300.311(Aug. 3, 2006).

used in educational decisions at staff meetings without CM's parents. (ARII 413).[7] His finding that CM's parents were not entitled to all education records that explained the "strategies used" and all "data collected" through the RTI process is a question of law.

CM"s parents expressly were entitled to consider RTI information in making decisions at the initial IEP team meeting regarding CM's eligibility under the specific learning category and the appropriateness of proposed services to meet his individual educational needs. The IDEA mandated the LSD to provide RTI documentation and does not condition that requirement upon whether eligibility determinations is based upon the RTI data. 20 U.S.C.A. § 1414(b); 34 C.F.R. § 300.311.

The ALJ's reasoning in deciding that CM"s parents were not entitled to RTI data, when CM's initial IEP team determined his eligibility and service needs, does not support a conclusion that the IDEA did not require RTI data to be provided. The ALJ reasoned that student study team (SST) notes and his parent's attendance at a meeting was adequate information for CM's parents despite IDEA requirements. (ARII 425 ¶3, 538-540). The ALJ erroneously found cursory information could be substituted for IDEA mandated documentation of the instructional strategies and the individual data that showed CM's response and progress from those interventions. The ALJ's conclusions that the LSD was not required to provide RTI documentation to CM's parents was erroneous and shows that the findings merit less deference.

## IV. THE COURT SHOULD CONSIDER DR. GUTERMAN'S SUBSEQUENT EVALUATION & SUPPLEMENTAL EXPERT TESTIMONY

It is undisputed that state law which is consistent with the IDEA may supplement it. However, the ALJ's exclusion of expert testimony conflicted with the IDEA's express authorization for parties to present evidence disclosed five business days before hearing. 20 U.S.C. § 2015(f)(2). Therefore, additional expert testimony should be permitted to supplement the record in that regard.

The Ninth Circuit also endorses the analysis of the First Circuit in *Burlington* which rejected a construction that would disallow expert testimony from all who did, or could have, testified at the administrative hearing. *Town of Burlington* at 790. Expert testimony is "helpful in illuminating the nature of the controversy" and aides the district court in its decisional process. *Id.*

---

[7] "District's RTI program successfully identifies students' areas of need early in their education and the provides those students with intensive, targeted instruction." ARII 413, ¶ 3).

Additional expert testimony is appropriate here because testimony regarding CM's progress in his 2008-2009 school year was disputed. Dr. Guterman's report and expert testimony are relevant to that issue and compensatory education needed for CM through the time of judgment. CM's current reading skills, as measured by Dr. Guterman, are relevant to show whether he made gains that the LSD contended CM gained through the end of his 2008-2009 school year after his parents obtained outside services. Dr. Guterman's report and testimony also would bring the Court up to date on CM's continuing lack of fluent reading skills. This evidence bears upon whether CM acquired skills as the LSD contended at hearing and whether LSD's measurement techniques were accurate to measure his ability.

Unless the Court determines that the LSD's intern was not qualified, as a matter of law to conduct CM's initial evaluation, as Plaintiffs contend, additional expert testimony to advise the court on the training of the student intern in school psychology also would be appropriate under *Burlington, Ojai* and *EM*. CM's right to compensatory education was already decided by the ALJ and exhaustion has given the LSD an opportunity to address Plaintiffs' claims in the first instance. The Court should review the administrative record and additional evidence requested by Plaintiffs to make its independent decision on the issues.

## V. ELECTRONIC MAIL, WITHHELD BY DEFENDANTS, SHOULD BE ADMITTED

Defendants contend that the record should not be supplemented with e-mail communications because the LSD's omission of those correspondence from CM's file prevented the documents from becoming education records. (Opp. pp. 3-4) The e-mails here are not like those in *S.A. v. Tulare County Office of Education*. In *Tulare* the school district placed hard copies of e-mail in the student's file and e-mail versions remained only on data servers.

Here, the LSD communicated with staff about CM's educational performance and elected to omit staff correspondence, hiding its conduct in response to CM's parents' IEE request. The LSD did not provide separate print copies of the e-mail correspondence in CM's file. The e-mail exchanged with staff concerning CM and his parents' request for an IEE is not the type of e-mail which falls under the *Tulare* exception to "education records," and LSD was required to produce them pursuant to Plaintiffs' request for educational records.

*Tulare* does not support a proposition that a school district can withhold internal communications

regarding its handling of a parents' IEE request. The e-mail correspondence between the LSD's director of student services and other staff shows that the LSD engaged in conduct to alter evidence. (Supp 2, 00013).

Dr. Sassone's e-mail of September 18, 2008 states, "Pat did not sign report; need all existing copies signed." (*Id.*) The LSD submitted a copy of the LSD's initial evaluation that was signed by its school psychologist after the September 17, 2008 IEP team meeting. (ARII 910, *compare* ARII 527). The later-signed report created the appearance that Patrick Garguilo, LSD's credentialed school psychologist, signed CM's initial evaluation at or near the time of its completion and discussion of it on April 18, 2007, having reviewed it. This e-mail is relevant to the LSD's pattern of conduct to deny IDEA rights.

This e-mail also is relevant to credibility because the LSD contended that its assessment plan proposal was based upon the need for performance data and parent request. (ARII 941, 1129). The e-mail shows that Dr. Sassone began to "negotiate" an evaluation by the LSD as a substitute for CM's parents IEE request before she prepared her assessment plan. Thus, the e-mail is relevant to whether a reevaluation of CM was sought for the purposes alleged and bad faith. The e-mail is non-cumulative and otherwise admissible based upon authentication by its contents.

Each e-mail also is relevant to the issue of the LSD's conduct in withholding required information from Plaintiffs, after a specific request for all e-mails related to CM and in contravention of IDEA procedural safeguards. 20 U.S.C. § 1415(b).[8] The e-mail between the LSD staff members, discussing CM's assessment wall data,[9] constitute records concerning CM educational needs. They provide specific information about his academic performance since kindergarten and reveal that important academic performance information that was available, but not provided to CM's parents at the time of CM's initial IEP team meeting. (Supp 2, 0003-4). Plaintiffs' education records request and Dr. Sassone's responsive e-mail are relevant to show that the LSD withheld documents specifically requested by CM's parents, including assessment wall data of RTI progress, which have yet to be provided. (Supp 2, 00003-4, 0008-10, 13). Facially, the documents are what Plaintiffs purport them to be. Therefore, they are otherwise admissible.

The documents also are relevant to the issue of Defendants' withholding of necessary information for

---

[8]"The procedures required by this section shall include . . . An opportunity for the parents . . . to examine all records relating to such child . . . ." *Id.*

[9]*See* Plaintiffs' Supp 2, 00003-00004.

CM's parents to participate meaningfully in educational decisions about CM. Assessment wall data was important for CM's parents to understand whether CM benefitted from prior interventions he received, as a guest in special education resource class, and whether continuing those services was likely to provide future educational benefit. Thus, the e-mails constitute "additional evidence" and should be admitted.

## VI. ELECTRONIC CORRESPONDENCE BETWEEN DEFENDANTS' ATTORNEY AND CDE IS RELEVANT, NON-CUMULATIVE & OTHERWISE ADMISSIBLE

Defendants argue that the LSD's correspondence with CDE are not relevant because retaliation is not part of Plaintiffs' claims regarding LSD's IDEA violations. However, the LSD's retaliatory conduct and conduct in seeking closure of Plaintiffs' State compliance complaint is relevant to show the LSD's ongoing bad faith conduct to prevent Plaintiffs access to IDEA procedural safeguards. The LSD's representations to CDE show that it is more likely than not that the LSD sought to circumvent IDEA procedural safeguards in other areas and that the LSD consistently withheld information from Plaintiffs. The LSD's conduct and intent to stop Plaintiffs from obtaining an IEE is also relevant to showing Defendants violated Plaintiffs rights to IDEA procedural safeguards. The documents are non-cumulative and otherwise admissible as authentic.

## VII. DR. LOOMOS' TESTIMONY IS PROPER TO CORRECT THE RECORD

Dr. Loomos' declaration properly confirms corrections to the transcript which did not accurately reflect her testimony on pages designated as Supp. 2, 00016–00021. (*See also* Declaration of Lina Foltz, supporting Reply). Defendants argue that Dr. Loomos may not correct her testimony. However, Dr. Loomos' correction of the transcript does not alter her testimony. It is a correction of the record. Plaintiffs also should be permitted to correct errors in the transcript independent of seeking to supplement the record. The eleven days of hearing transcripts contain many "inaudible" references and erroneous transcriptions that may not arise until discovery and dispositive motions are completed.

## VIII. FIRST NOTICE OF PROCEDURAL SAFEGUARDS

Defendants misstate the evidence, claiming procedural safeguards were given to Plaintiffs on February 20, 2007. (Opp. p. 23-27). The evidence Defendants cite shows only that CM's mother signed an assessment plan on February 20, 2007 and received a one-page "Notice of Special Education Referral" attachment, which bears the parents' names, but CM's parents did not sign. (ARI 247, 644-646, TRI 909-

910, ARII 414, 422). CM"s mother's signing of CM's initial assessment plan does not support a conclusion that the LSD provided CM's parents with notice of their rights to IDEA procedural safeguards. (ARI 247, 644). Contrary to Defendants' contentions, undisputed evidence confirmed that CM's parents did not receive notice of their rights to IDEA procedural safeguards.

Specifically, Ms. Jones testified that she did not recall meeting with CM's parent on February 20, 2007 and had no specific memory of a meeting when CM's mother signed the assessment plan. (TRI 243:1-19[10], TRI 245:16-24[11]). CM's mother confirmed that CM's parents did not receive a notice of parent's rights under the IDEA with the February 20, 2007 assessment plan, and the original 2 pages of documents, that she still had at home, were the only documents she received on February 20, 2007. (ARI 913:1-17).

Plaintiffs Supp. 2, 00014-00015 are relevant to the timing and content of procedural safeguards that the LSD provided to CM's parents and their time-barred claims. They are non-cumulative and otherwise admissible, based upon the content. Fed. R. Evid. 901(b)(4).

## IX. <u>NATIONAL ASSOCIATION OF SCHOOL PSYCHOLOGIST STANDARDS SHOULD BE ADMITTED TO SUPPLEMENT THE RECORD</u>

In response to questions from the ALJ, the LSD school psychologist testified that supervision of student interns in school psychology is standardized by the National Association of School Psychologists (NASP) and its supervision guidelines. (TRII 1438:2-1439:14). Although neither party submitted the NASP publication, the ALJ found persuasive the school psychologist's testimony that "his supervision of interns is consistent with the National Association of School Psychologist's Guidelines." (ARII 423, ¶6). The hearing officer also found credible the school psychologist's opinion that the LSD initial evaluation of CM was accurate, even though the school psychologist has never met CM. (TRII 1440:9-25).

---

[10]". . . did you provide it to [CM's] parents? [Ms. Jones] Yes. Q. You mailed it to them? A. By common practice . . . I make an appointment with the parents to sit down and go over the paperwork . . . . Q. do you recall sitting down with them to do that? A. Well, that's the practice. . . . we could check regarding the dates received. That's the only way I could think back two years to whether we actually sat down."

[11]"So other than Exhibit 17, . . . and the assessment plan itself, was there anything else that you would have given to the parents . . . .? A. Procedural Safeguards. . . . (line 17) Q. And do you recall giving that to the parents? A. Yes. Q. But you don't recall meeting with them? A. Well, given it's two years ago, but . . . if I received it on 2-20 and they did it on 2-20. that would make me believe that we sat down and had a meeting. Q. But you don't recall specifically? A. No." *Id.*

District Defendants contend "there is no independent reason to believe that a national trade association's guidelines had any bearing on the training [its student intern] received." However, its school psychologist cited NASP as the authoritative body that sets standards for school psychologists. (TRII 1438:2-1439:14). Additional materials published by NASP are relevant to the intern's training and useful to the Court on the controversy. The supplemental excerpts that Plaintiffs provided are relevant, non-cumulative and are admissible by judicial notice of this official publications relied upon by the expert school psychologist for his testimony and which is not subject to reasonable dispute. Fed. R.Evid. 102, 402, 902(5). (*See* complete publication attached to the Declaration of Lina Foltz supporting this Reply).

In the administrative hearing underlying this case, the intern's training and supervision were part of the limited issue of whether the school psychologist intern was qualified to perform the duties of a school psychologist at the initial IEP team meeting and whether CM's parents received necessary information at that IEP team meeting to participate meaningfully in decision making. The NSPS standards explain the training that an intern in school psychology is undergoing and the qualifications required for an individual to be qualified as a school psychologist.

Plaintiffs contend that the student intern was not qualified as a matter of law to conduct CM's psychological, cognitive and social-emotional evaluations. However, to the extent Defendants contend that an intern is qualified to substitute as a credentialed school psychologist, the NAPS standards are relevant to training and will assist the court with determining the factual issues. The testimony of an expert to explain the standards constitutes additional evidence under Ninth Circuit authority and should be admitted. *Ojai* at 1473. (Adopting the standard for admission of additional evidence as explained in *Town of Burlington*), *see also*, *EM v. Pajaro Valley Unif. Sch. Dist.*, __ F.3d __, 2011 WL 2714168, 5 (9th Cir. 2011)(Non-cumulative expert testimony is useful to the court and admissible as "additional evidence.).

## X. LSD's OCTOBER 15, 2008 LETTER TO CM's PARENTS SHOULD BE ADMITTED AS "ADDITIONAL EVIDENCE" & TO REFUTE INACCURATE REPRESENTATIONS KNOWINGLY MADE BY THE LSD AT HEARING

The LSD argues that its October 15, 2008 letter is irrelevant. The ALJ concluded, "Since no assessments were presented at this IEP meeting, the attendance of a school psychologist, speech language pathologist, or occupational therapist was not needed to interpret any assessment results." (ARII 431, ¶2). The letter is relevant to show that Dr. Swain's processing assessment was discussed

at that IEP meeting, but that the LSD failed to document it. Plaintiffs did not know, until the administrative hearing decision issued, that the letter would be relevant to the ALJ's erroneous findings that CM's parents failed to provide private assessment information promptly.

The ALJ concluded that CM's parents "withheld Dr. Loomos's report from the IEP tem for their consideration," despite CM's mother's uncontroverted testimony that she provided Dr. Loomos' report to the LSD's staff, as soon as she received it. (ARII 452; TRII 2630: 4-22[12], March 4, 2010; *see also* TRII 2634:25-2635:6[13]). The LSD's letter is relevant to show that CM's parents did not withhold reports or information about private evaluations from the LSD, but instead discussed concerns raised by private evaluators with CM's IEP team even before the report issued. The letter also is relevant to show that the LSD failed to document important discussions at IEP team meetings.

The LSD knew at hearing that CM's IEP team had discussed Dr. Swain's report at the March 18, 2008 IEP team meeting and that CM's parents promptly provided reports and information from the private evaluations they obtained. Thus, the LSD's October letter is relevant and non-cumulative. The letter is otherwise admissible because it is self-authenticating on its face which demonstrates it to be what Plaintiffs purport it to be. Fed. R. Evid. 901(b)(4). Admitting it prevents injustice.

## XII. CONCLUSION

Based upon the foregoing, the Court should allow Plaintiffs to supplement the record as requested.

Dated: September 30, 2011 Respectfully submitted,

/s/ *Lina Foltz*
Lina Foltz, Attorney for Plaintiffs

---

[12] ". . . you had him evaluated by Dr. Loomos? [EM] Correct. . . . And when you got her report did you share it with the District? [EM] I did. As soon as I got it, I gave Jane a copy and I gave a copy to the front desk and I gave Ms. Carson a copy. . . ." *Id.*

[13] ". . . after Dr. Swain evaluated [CM] did you share that report with the District? [EM]: I did. . . . Did you share it right away? [EM]: Yes." *Id.*