LINA FOLTZ, Attorney-At-Law, (SB# 167813)
11 Embarcadero West, Suite 230
Oakland, California 94607
Telephone: [510] 663-7199
Facsimile: [510] 444-8102

Attorney for Plaintiffs M.M., E.M. & C.M.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| M.M. & E.M., individually and on behalf of their minor son C. M.,<br><br>Plaintiffs,<br><br>vs.<br><br>LAFAYETTE SCHOOL DISTRICT, a Local Educational Agency and LAFAYETTE BOARD OF EDUCATION,<br><br>Defendants. | Case No. **C10-04223 SI**<br>(Consolidated with C09–04624 SI)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**FRCP, Rule 56**<br><br>Date: October 28, 2011<br>Time: 9:00 a.m.<br>Room: Courtroom 10, 19th Floor<br><br>Complaint filed: September 17, 2010<br>1ST A. Complaint filed: October 22, 2010 |

**TABLE OF CONTENTS**


**I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1**

**II. DEFENDANTS' MOTION DOES NOT LIE IN THIS CASE & MUST BE DENIED . . 2**

**III. THE LSD's INITIAL EVALUATION WAS INADEQUATE UNDER THE IDEA & THE CALIFORNIA EDUCATION CODE AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . 6**

**IV. DEFENDANTS SEPTEMBER 25, 2008 ASSESSMENT PLAN DOES NOT SATISFY IDEA REQUIREMENTS FOR A DETERMINATION THAT REASSESSMENT WAS WARRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13**

**V. THE ALJ'S DECISION IN THIS CASE IS NOT ENTITLED TO DEFERENCE . . . . 17**

**VI. DEFENDANTS' MOTION MUST BE DENIED AS TO COLLATERAL ISSUES ARGUED BUT NOT NOTICED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18**

**VII. THE IDEA REQUIRED THE LSD TO PROVIDE RTI DATA TO CM'S PARENTS . . 19**

**VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22**

# TABLE OF AUTHORITIES

**CASES**:

*Clyde K. v. Puyallup School District, No. 3*, 35 F. 3d 1396 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 1
*Asso. for Retarded Citizens v. Dept of Developmental Svc*, 38 Cal.3d 384 (1985) . . . . . . . . . . . . .10

## STATUTES & REGULATIONS

**FEDERAL**:

United States Codes Annotated (West 2010)
20 United States Codes:
20 U.S.C. § 1400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19
20 U.S.C. § 1412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
20 U.S.C. § 1414 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 13-14, 16
20 U.S.C. § 1415(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16, 19
20 U.S.C. § 1415(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
42 U.S.C. § 794 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Rules of Civil Procedure, Rule 7(b) (West 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Title 34 Code of Federal Regulations (August, 14 2006)
34 C.F.R. § 300.8(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
34 C.F.R. § 300.301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
34 C.F.R. § 300.311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
34 C.F.R. § 300.502(b)(2)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATE**:

California Education Code
Cal. Education Code § 44454 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Cal. Educ. Code § 56320 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10, 12
Cal. Edu. Code § 56324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10
Cal. Edu. Code § 56329(b-c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

California Code of Regulations, Title 5
5 C.C.R. § 3029 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
5 C.C.R. § 3051.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10
5 Cal. Code Regs. § 3065(o) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## MEMORANDUM OF POINTS & AUTHORITIES

Plaintiffs present this Memorandum of Points and Authorities in Opposition to Defendants' Motion for Partial Summary Judgment (Pt. MSJ) on Assessment Issues as follows:

## I. INTRODUCTION

Lafayette School District (LSD) and Lafayette Board of Education (Board) (collectively, Defendants) improperly seek partial summary judgment on issues decided in the consolidated case underlying District Court Case C09-04624 SI, by filing their motion in this action C10-04223 SI. Defendants motion must be denied, in part, because Defendants motion does not address the administrative error underlying this case.[1] Plaintiffs OBJECT to Defendants factual allegations and argument which go beyond relevant matters to assessment issues identified in Defendants' Notice of Motion for Partial Summary Judgment.[2]

The Defendants bear the burden of proof for each of the claims in their 2009 administrative case, based upon the record and findings that constituted reversible error, which all occurred in Office of Administrative Hearings (OAH) case N2008-120161 which underlies C09-04624 SI. Defendants also bear the burden of proving that the ALJ erred when he determined that Plaintiffs were entitled to reimbursement for their IEE. *Clyde K. v. Puyallup School Dist., No. 3*, 35 F.3d 1396(1994). Defendants cannot avoid their burden of proof to show that the hearing officer erred in his findings, including, that CM's parents were entitled to an IEE at public expense, by bringing their motion in this case.

By their motion, Defendants seek summary judgment on the sufficiency of the LSD's initial evaluation, IEE reimbursement and whether LSD was permitted to conduct a reevaluation under the IDEA. Defendants attempt to bootstrap the issues in case C09-04624 SI to the ALJ's findings underlying this case cannot support summary judgement here and constitutes an improper attempt to challenge the adverse findings and decision in the LSD's 2009 OAH case, when Defendants did not appeal the decision in case N2008-120161. Defendants partial summary judgment motion on "Assessment Claims" does not lie here, must be denied and must be filed, if at all, in C09-04264 SI.

---

[1] Defendants' motion includes a contention, "The District Was Not Required to Provide RTI Data to the Parents," and others, which appear to relate to an issue in the parents' administrative hearing. Plaintiffs address the contentions separately, but objects to such issues as outside Defendants' notice.

[2] To the extent the Court may entertain argument regarding un-noticed facts or issues, Plaintiffs request additional briefing to be set by the Court.

Defendants' claim, that their conduct in closure of the CDE investigation was not a denial of a FAPE, ignores this Court's prior dismissal of Plaintiffs' claim that Defendants' conduct constituted a violation of the IDEA. (*See* Docket 28, Order granting, in part, Defendants' motion to dismiss). Accordingly, Plaintiffs now state a retaliation claim, pursuant to §504 of the Rehabilitation Act, concerning Defendants' conduct in the closure of the CDE investigation. Defendant's summary judgement motion on this issue under the IDEA, must be denied as moot or irrelevant. Defendants do not address Plaintiffs' § 504 retaliation claims in their Notice or Motion and summary judgment would improper because discovery is pending on these claims.

Also, discovery has not been completed in either case and the current administrative record is not sufficient to conclusively determine issues of fact at this stage in the proceeding. Motions to supplement the record currently are pending. Defendants cite proposed supplemental documents in their motion which were not before the Court, and that should not be admitted. (Pt. MSJ p. 21:4-9, p. 23:10-14).[3] The accuracy, interpretation and relevance of the supplemental documents are disputed and cannot establish conclusive facts to support summary judgment, even in the proper case.

Plaintiffs object and Defendants' premature references to such documents and factual misstatements regarding such documents must be rejected. Plaintiffs request leave to file a supplemental Opposition if the Court entertains Defendants' current motion for partial summary judgment in this case.

## II. DEFENDANTS' MOTION DOES NOT LIE IN THIS CASE & MUST BE DENIED

Defendants seek partial summary judgment on two primary issues, neither of which was decided by the ALJ in this case. First, Defendants claim the initial assessment was appropriate. (Pt. MSJ p. 6)[4]. Within this claim Defendants argue: (a) that a student intern in school psychology was qualified to act as a credentialed school psychologist for purposes of conducting CM's IDEA initial evaluation;

---

[3]Defendants cite Mr. Egnor's declaration and documents thereto, which are not part of the record in either case.

[4]Defendants Notice asserts that the ALJ, underlying this case, correctly decided that the LSD's initial assessment was appropriate and that "District had the right to reassess CM pursuant to its assessment plan dated September 24, 2008 . . . ." (Defendants' Notice p. 2: 12-17). However, those issues were not within the issues before the ALJ in the administrative case. AR-II 409-412.

(b) the initial psychoeducational assessment was valid in various regards, (c) that the ALJ was not required to resolve the appropriateness of the LSD's initial evaluation; (d) that the ALJ properly reduced Plaintiffs' IEE reimbursement; (e) that the reimbursement issue is moot, based upon disputed evidence; and, (e) that Defendants' conduct in connection with CDE's closure of its compliance complaint investigation did not constitute a denial of a free appropriate public education under the IDEA. (Pt. MSJ, pp.6-20). Each of these issues were addressed by the ALJ in the LSD's administrative case underlying C09-04624 SI and do not lie here.[5]

Second, Defendants conflate the two cases consolidated to claim here that the LSD was entitled to reassess CM. (Pt. MSJ, p.21). Within this claim, Defendants argue: (a) that the ALJ properly held that reassessment was warranted (b) that the reassessment issue is moot, based upon disputed evidence that is not in the record; (c) that Plaintiffs did not dispute or prove below that new assessments would "useful" and reassessment pursuant to the LSD's September 25, 2008 Assessment Plan would be consistent with the IDEA, regardless of the LSD's motives therefor. (Pt. MSJ, pp.21-25). Again, these claims concern the ALJ's decision underlying case C09-04624 SI and do not lie here. Defendants' alleged facts as support for partial summary judgment also are disputed, inaccurate and irrelevant to the issues in this case.

**The LSD's Underlying Administrative Complaint in 2008**

In 2008, the LSD stated three "ISSUES TO BE DECIDED" in their OAH complaint, as follows:

> **A. Requested IEE is Not Appropriate at This Time**
>
> A parent has the right to obtain an IEE at public expense if she disagrees with a District assessment. However, a parent cannot merely request an IEE based on the last, outdated assessment . . . Student's request for an IEE is not timely.
>
> **B. When Conditions Warrant Reassessment, District Is Entitled to Reassess Using Its Own Personnel**
>
> When conditions warrant reassessment, the District has the right to conduct that assessment using its own personnel. Therefore, if reassessment is warranted, the District has the right to conduct that assessment pursuant to the assessment plan proposed on September 24, 2008.
>
> **C. District's April 2007 Assessment is Appropriate**
>
> A student is only entitled to an IEE at public expense where District's assessment is shown to

[5]Defendants' allegation (e), concerning CDE's investigation closure, as a denial of a FAPE, was part of Plaintiffs affirmative challenge to jurisdiction and abstention request that Plaintiffs raised by their administrative Response and is addressed above. (AR-I 30-31, Issue & Proposed Resolution 1).

> be inappropriate. District's April 2007 assessment is appropriate. Therefore, Student is not entitled to an IEE. (AR-I, 4).

**Plaintiffs' Response to the LSD's Complaint**

Plaintiffs Response asserted first that the OAH should abstain from hearing the complaint because Plaintiffs filed a CDE complaint to investigate the LSD's "unreasonable delay in either authorizing the IEE or requesting a due process hearing." (AR-I, 30 ¶ 4). Plaintiffs alleged:

> the investigation should have been completed within 60 days. Instead, the District improperly interfered with CDE's resolution of the complaint by requesting a stay . . . . (*Id.*).

Second, Plaintiffs answered the LSD's reassessment allegation. Plaintiffs requested dismissal of the issue because neither the assessment plan nor the complaint accurately identified the "Conditions" that warranted reassessment and "the District asserts that reassessment is necessary only because [CM's] parents requested an IEE." (AR-I, 31). Plaintiffs alleged, the LSD's assessment plan was inaccurate and defective as adequate notice and that the issue should be dismissed for LSD's failure to comply with mandatory procedural requirements for obtaining a due process hearing on that issue. (AR-1, 31 ¶ 7).

Third, Plaintiffs answered that the LSD's initial evaluation was not appropriate. (AR-1, 33). On March 2, 2009, the OAH set fort the issues as: "those alleged in the due process complaint, as clarified by the parties and the ALJ at the prehearing conference." (AR-1, 51). On April 20, 2009, the OAH conducted a telephonic hearing conference and clarified Plaintiffs' contentions regarding insufficiencies in the LSD's initial evaluation of CM. (AR-1, 84). The OAH Order Following Pretrial Conference stated:

> Student further clarified his position . . . by identifying the areas of dispute regarding the District's April 2007 assessment. . . . The Student contends that the District: failed to assess him in all areas of suspected disability, specifically audiology, speech-language, motor skills, vision processing, and social emotional; failed to use qualified personnel to administer the assessment; failed to administer tests . . . in a form most likely to yield accurate information on what the pupil knows and can do academically, developmentally and functionally; failed to use test instruments for the purpose for which those assessment materials were valid and reliable; . . . failed to select and administer its assessments to ensure that results accurately reflected his aptitude and/or achievement levels rather than his deficits in language arts, auditory processing and vision processing, . . . failed to conduct a sufficiently comprehensive assessment to identify all of his special education and related service needs regardless of his disability category.

(AR-1, 84). The issues concerning the insufficiency of the LSD's initial evaluation under the IDEA were raised and heard in the LSD's 2009 administrative hearing, underlying case C09-04624 SI.[6]

---

[6]Defendants' contention that the ALJ properly declined to address the insufficiencies in the LSD's initial evaluation is not properly brought in this case.

The District's "slightly reworded" issues for hearing were stated by the ALJ as:

(1) Did District's April 2007 assessment of Student comply with the legal requirements?

(2) Is Student eligible to receive an independent educational evaluation (IEE) at District expense as requested on September, 2008?

(3) Does the District have the right to assess Student as described in its September 24, 2008, assessment plan in the areas of social/emotional/behavioral status, educational achievement and intellectual development? . . .

*Student's Affirmative Defense*:

Did the District fail to timely respond to Student's September 18, 2008, request for an IEE?

Defendants attempt to challenge the ALJ's decision on the legal sufficiency of the LSD's initial evaluation, its claimed right to reevaluate CM, and its obligation to reimburse Plaintiffs for the IEE, constitute a challenge to the operative complaint in case C09-04624 SI. Plaintiffs' second amended complaint, for C09-04624 SI, challenges the ALJ's IEE reimbursement reduction, his authorization for reevaluation and his improper substantive change to the issues alleged in the LSD's administrative complaint. (*See* Second Amended Complaint (2nd AC) p. 20, ¶88; pp. 22-25). Defendants' motion improperly challenges the issues raised in Plaintiffs' complaint for case C09-04624 SI, and must be denied. But, Defendants' motion must be denied even if it was filed in the proper case.

Plaintiffs 2nd AC in C09-04624 SI, for example, alleges that the ALJ erred when he denied reimbursement for the full cost of the IEE and by denying reimbursement for the evaluator's charges to attend CM's IEP team meeting to explain her test results, $5,300, plus interest. (2nd AC , p. 23, ¶ 91; p.30, ¶1). Plaintiffs also request declaratory relief, finding that the ALJ's introduction of equitable reduction as an issue violated IDEA procedures and was erroneous. (*Id.* p. 31, ¶6).

Defendants' contend that payment of $4,800 in reimbursement renders the reimbursement issue moot. (Pt. MSJ p. 21:4-9). Defendants may not dispute here whether the reduced reimbursement awarded by the ALJ in 2009 is moot and Plaintiffs dispute that they have received full payment. Defendants apparently claim Plaintiffs are not entitled to reimbursement for the IEE. Defendants cannot dispute Plaintiffs' right to IEE reimbursement, for Dr. Guterman's evaluation, in either case.

Assuming, *arguendo*, that Defendants brought their motion in the proper case, Defendants' motion must be denied because they did not appeal Plaintiffs' right to IEE reimbursement. In addition, IDEA

regulations confirm that the ALJ in the LSD's 2009 OAH case erred, as a matter of law, because the IDEA does not permit an ALJ to require a parent to pay any part of the IEE expenses.

Unless the school district demonstrates at the due process hearing that its evaluation was appropriate, the parent who disagreed with the evaluation and requested an IEE, is entitled to obtain it "at public expense." 34 C.F.R. § 300.502(b). "Public expense means that the public agency either pays for the full cost of the evaluation or ensures that the evaluation is otherwise provided at no cost to the parent . . . ." 34 C.F.R. § 300.502(a)(3)(ii)(Aug. 2006). The IDEA does not authorize an equitable reduction in an IEE reimbursement which expressly must be provided "at no cost to the parent." *Id.* The ALJ erred as a matter of law.[7] Further, Defendants improperly seek partial summary judgement on evaluation issues in this case because the sufficiency of the LSD's initial evaluation was not a hearing issue.

In Plaintiffs' 2010 OAH case, the OAH dismissed, as time barred, Plaintiffs' claim that the LSD's initial evaluation was inappropriate under the IDEA. (TR-II, 48:20-49:9; 52:9-18). The dismissing ALJ stated that facts related to erroneous or insufficient information, caused by a defective initial evaluation, could be presented if relevant to CM's parents' meaningful participation in the IEP team decision making process or to show IEP's defects. However, Plaintiffs were barred from litigating the sufficiency of the LSD's initial evaluation at hearing. (*Id.*; AR-II, 409-412).

The hearing issues tried in the 2010 OAH case were limited to denial of a FAPE to CM that occurred beginning with CM's initial IEP team meeting on April 18, 2007 and procedural and substantive defects that violated the IDEA after that date. (*Id.*, AR-II, 409-412). Thus, the issues addressed in Defendants' motion for partial summary judgment concern the OAH decision underlying C09-04624 SI and are not appropriately raised in this case. Accordingly, the motion and be denied.

## III. THE LSD's INITIAL EVALUATION WAS INADEQUATE UNDER THE IDEA & THE CALIFORNIA EDUCATION CODE AS A MATTER OF LAW

Subject to Plaintiffs' objections to Defendants' filing their motion in this case, Plaintiffs briefly address some additional issues raised in Defendants' argument to demonstrate that Defendants' motion lacks merit, even if it had been filed in the proper case, because Plaintiffs prevailed or should have prevailed as a matter of law in the LSD's 2009 OAH case. The LSD's 2009 OAH record established that the LSD's initial

[7]Factually, Plaintiffs also contend, in the proper case, that Defendants' payments do not constitute full payment of $5,300, plus interest, to support a mootness argument. (2nd AC, p.30, ¶1).

evaluation was inappropriate under the IDEA. Plaintiffs prevailed on the issue of the initial evaluation's insufficiency because the ALJ did not find that the LSD initial assessment of CM was appropriate or that Plaintiffs' IEE was inappropriate. 20 U.S.C. § 1415(b); 34 C.F.R. § 300.502(b)(2)(ii)[8]; Cal. Edu. Code § 56329(b-c).[9]

Because the LSD did not obtain a decision, at its administrative hearing in 2009, that its initial evaluation of CM was appropriate, as is expressly required by the IDEA, Plaintiffs prevailed at that hearing to establish their entitlement to an IEE "at public expense." The LSD's failure to establish that its initial evaluation was appropriate or that Plaintiffs' evaluation was not appropriate was conclusively established as *res judicata* when the LSD failed to appeal the OAH decision. The Court should hold that Defendants are collaterally estopped to assert here that the LSD's initial evaluation of CM was appropriate, based upon the record in case C09-04624 SI. The Court should find there that the LSD failed to satisfy its burden of proof as to the sufficiency of its evaluation under the IDEA and that Plaintiffs prevailed on all issues raised by the LSD's administrative complaint underlying case C09-04624 SI.

Assuming *arguendo* that the LSD's administrative decision underlying case C09-04624 did not conclusively establish the insufficiency the LSD's initial evaluation, Defendants still cannot seek summary judgment here, because the sufficiency-of-the- assessment issue was not before the ALJ in this case. (AR-II, 91, 148-151, 194-195, 208-213; 409-412; TR-II 49:6-9). The ALJ exceeded his jurisdiction, to the extent he made a finding on the sufficiency of the LSD's initial evaluation, after OAH had determined the issue was time-barred. (TR-II 47:4-49:9; 51:21-53:9). The ALJ's findings regarding the sufficiency of the LSD's initial evaluation, after Plaintiffs' claim was dismissed as time-barred, constituted a violation of Plaintiffs' right to IDEA procedural safeguards and violated "appropriate standard legal practice," including the opportunity to present evidence after notice of the issues to be decided. 20 U.S.C.

---

[8] "If a parent requests an [IEE] at public expense, the public agency must, without unnecessary delay, either . . . request a hearing to show that its evaluation is appropriate; or (ii) Ensure that an [IEE] is provided at public expense, unless the agency demonstrates in a hearing . . . that the evaluation obtained by the parent did not meet agency criteria. 34 C.F.R. § 300.502(b)(2)(ii).

[9] "A parent . . . has the right to obtain, at public expense, an [IEE] . . . if the parent . . . disagrees with an assessment obtained by the public educational agency, in accordance with § 300.502 . . . . (c) . . . If the final decision resulting from the due process hearing is that the assessment is appropriate, the parent . . . maintains the right for an [IEE] but not at public expense." Cal. Edu. § 56329(b-c).

§ 1415(b)(7); § 1415(f)(3)(a)(iv).

In addition, to the extent the ALJ concluded that the student intern was qualified to attend CM's initial IEP team meeting, because she was qualified to conduct an IDEA evaluation in the place of a credentialed school psychologist, he erred as a matter of law. Without waiving their objection, Plaintiffs' briefly address this issue as an example of grounds to deny Defendants' motion even if it was before the Court in the proper consolidated case.

The IDEA requires each participating state to ensure that children with disabilities are evaluated in accordance with § 1414(a-c). 20 U.S.C. § 1412(a)(7). The IDEA prescribes the elements that must be included in an initial evaluation. 20 U.S.C. § 1414(a-c). An initial evaluation must consist of procedures to determine if the child is a child with a disability, and to determine the educational needs of the child. 20 U.S.C. §1414(a)(1)(c); 34 C.F.R. § 300.301(c)(2). Evaluations must be conducted by qualified personnel who meet state standards. 20 U.S.C. §1412(a)(14); §1414(a)(b)(3)(iv-v). "Evaluation," under federal law, and "assessment," under California law have the same meaning.

The California Legislature implemented the IDEA through California Education Code §§ 56000-56885. The California Education Code sets forth qualifications requirements for individuals who conduct special education assessments and the necessary procedural and substantive components for appropriate assessment to satisfy the IDEA, as follows:

> Before any action is taken with respect to the individual placement of an individual with exceptional needs in special education instruction, an individual assessment of the pupil's educational needs shall be conducted, by qualified persons, in accordance with requirements including, but not limited to, all the following: . . . (b) Tests and other assessments meet all of the following requirements: . . . individually administered tests of intellectual or emotional functioning shall be administered by a credentialed school psychologist." Cal. Educ. Code § 56320.

California law also mandates that: "Any psychological assessment of pupils shall be conducted in accordance with § 56320 and shall be conducted *by a credentialed school psychologist* . . . ." Cal. Edu. Code § 56324, *emphasis added.*[10] California regulations authorize State educational agencies to contract with private psychologists when a credentialed school psychologist is not available to conduct

---

[10]California Education Code § 44454 concerns teaching credentials and does not apply. Section 49422 does not authorize an intern in school psychology to conduct assessment pursuant to California Education Code § 56320 or § 56324.

an evaluation under the IDEA. 5 C.C.R. § 3029.[11]

A pupil services credential may qualify an individual to provide certain types of psychological services, but expressly does not qualify an individual to conduct assessments under the IEP or to develop an IEP. *See e.g.* 5 C.C.R. § 3051.10; § 3065(o)[12]). The LSD's initial evaluation of CM violated State law requirements that implement the IDEA and was therefore inadequate under the IDEA as a matter of law.

Undisputed evidence established that the LSD's evaluator was a student intern in school psychology and not a credentialed school psychologist when she administered psychological tests and individual tests of CM's intellectual and social-emotional functioning. (TR-I, 297). The LSD's credentialed school psychologist did not observe the intern's test administration. (TR-I, 114:15-17 & 115:16-22; TR-I, 476:6-13). The intern individually administered Cameron's psychological testing using the Wechsler Intelligence Scale for Children, 4th Edition (WISC-IV); the Comprehensive Test of Phonological Processing (CTOPP); and the Wide Range Assessment of Memory and Learning (WRAML-2). The intern also conducted assessment with the Behavior Assessment System for Children, 2nd Edition (BASC-2), using the Parent Rating Scale, and individually administered the Draw-a-person sub-test to assess Cameron's adaptive and social/emotional functioning. (Pt. MSJ).

Defendants argue that the intern's pupil services credential qualified her to conduct an IDEA eligibility evaluation and to act as a school psychologist at CM's initial IEP planning team meeting. California's IDEA regulations refute this contention. The intern's pupil services credential states that she is qualified to provide the type of services identified in the California Code of Regulations §§ 3051.10 and 3065 and "psych-educational" evaluations. However, the credential does not authorize her to conduct "psychological" evaluations or "individually administered tests of intellectual or emotional functioning."

---

[11] ". . . School districts . . . shall ensure that credentialed school psychologists are available to perform individually administered tests of intellectual or emotional functioning pursuant to § 56320(b)(3) of the Education Code. (b) Due to the temporary unavailability of a credentialed school psychologist, a school district . . . may contract with qualified personnel . . . (d) The only persons qualified to provide services under this section shall be educational psychologists licensed . . . ." 5 Cal. Code Regs. § 3029.

[12] ". . . Psychological Services means: (A) Psychological counseling . . . (D) This term does not include assessment services and the development of an IEE. . . . (2) Psychological services, other than assessment and development of the [IEP] shall be provided only by personnel who possess a . . . (E) pupil services credential that authorizes school psychology." 5 Cal. Code Regs. § 3065(o).

A "psycho-educational" assessment and "special needs" may refer to many other types of student service needs and educational assessments outside of those conducted under the IDEA. The intern's credential did not authorize her to conduct psychological evaluations to identify special education eligibility or needs under California Education Code §§ 56320, 56324 or the IDEA, regardless of whether she might be qualified to conduct a type of "psychoeducational evaluation" of a different type. State regulations that except assessment services and development of an IEP from the definition of "psychological services" are consistent with the express requirements of §§ 56320 and 56324.

The student intern's pupil services credential does not and cannot authorize a student intern to conduct an IDEA evaluation or to perform the functions of a school psychologist at an IEP planning team meeting, in direct violation of state law promulgated under the IDEA. Defendants essentially argue that a credential, issued by the California Teacher Credentialing (CTC), nullifies State law requirements by authorizing a student intern to "conduct psycho-educational assessments for purposes of identifying special needs." (Pt. MSJ, p. 7:7-8). However, an administrative agency, like CTC, has only that authority granted to it by statute. *Asso. for Retarded Citizens v. Dept of Developmental Svc*, 38 Cal.3d 384, 391 (1985)("Administrative action that is not authorized by, or is inconsistent with, acts of the Legislature is void"). The CTC, as a department under the executive branch of California government, cannot nullify state law or authorize actions in contravention of express California statutory requirements. No statute authorizes the CTC agency to alter the statutory qualifications established by the California legislature.

Defendants request judicial notice of a CTC publication. (Def. RJN). The document also demonstrates that school districts and other educational agencies are authorized to contract with qualified psychologists when a credentialed school psychologist is not available to conduce an IDEA evaluation. (L-3). The publication refutes a conclusion that student interns may perform a school psychologists legal duties under the California Education Code § 56320. Defendants' request for judicial notice should be denied.

California law required CM's initial evaluation for eligibility under the IDEA to be conducted, at a minimum, by a school psychologist. If a school psychologist was not available, California regulations authorized the LSD to contract with an educational psychologist. 5 Cal.Code Regs. § 3029. State regulations did not authorize the LSD to use a student intern to conduct individually

administered tests of intellectual or emotional functioning for CM or psychological tests and the CTC's credential does not provide otherwise.

In addition, the IDEA required testing for CM's initial evaluation to be conducted in conformity with the test maker's instructions. 20 U.S.C. §1414(b)(3)(A)(iv). Test makers required "C" level qualifications, completion of graduate level training, to qualify to administer the WISC-IV, BASC, WRAML-2 and interpret the WJ-III academic achievement tests administered to CM. (AR-I, 539, 543, 564, 556, respectively and 566-"C" level explained). The LSD's intern had not completed graduate level study and was not qualified to administer or interpret test results that required "C" level qualifications. The intern's use of the parent rating scale from the BASC-2 to evaluate CM's social-emotional functioning also violated test maker instructions. (AR-I, 483).[13] On these grounds alone, the intern was not qualified to conduct CM's initial evaluation, as a matter of law, and the LSD's evaluation violated IDEA requirements as implement in California law, even in case C09-04624 SI.

The intern's administration of Cameron's psychological testing violated State law which mandates certification as a school psychologist as a prerequisite for conducting psychological testing and individually administered assessments to evaluate a student's special education eligibility and needs under the IDEA. Because no qualified evaluator conducted CM's testing, errors caused by insufficient qualifications must be presumed. The intern was not qualified to conduct CM's psychological assessments, pursuant to California law that implements the IDEA. Therefore, her assessment was not appropriate under the IDEA, as a matter of law.

Moreover, Plaintiffs experts identified specific defects in test administration and interpretation by the intern, which the LSD did not refute, and which cause erroneous measurement of CM's cognitive ability and unique needs. (AR-I, 87-91)[14]. Defendants failed to satisfy their burden of proof to show

---

[13]The instructions advise: "The [BASC-2] is an integrated system designed to facilitate the differential diagnosis and classification of a variety of emotional and behavioral disorders of children and to aid in the design of treatment plans. This computer generated report should not be the sole basis for making important diagnostic or treatment decisions." (AR-I, 483).

[14]Defendants intern failed to indicate corrective feedback (AR-I, 87, ¶2); failed to score test responses according to test instructions (AR-I, 88, ¶ 3); failed to administer testing using recognition measures CM's actual knowledge and distinguish impaired retrieval (AR-I, 3-4, ¶ 12; TR-I, 806:4-808:14); and failure to recognize "red-flags" indicative of auditory processing deficits and emotional

that its evaluation was appropriate in light of its multiple defects. For example, the IDEA required assessment in all areas of disability, using tests that accurately measured CM's ability and needs for special education and related services, and using tests for their validated purpose.[15]

The record demonstrates that the LSD did not include a proper form of testing for determine CM's ability and needs, in part, because it ignored the discrete features that defined his dyslexia. The intern's cognitive testing was fatally flawed because the form of her cognitive testing used free recall measures exclusively. (TR-I, 806:4-808:14). Impaired retrieval ability is a feature of CM's dyslexia that prevented accurate measure of what CM's cognitive ability using a form of testing that required free recall. (*Id.*). Dr. Guterman included "recognition" measures and "test the limits" format to elicit CM's significantly higher cognitive measure despite CM's retrieval deficits. (TR-I, 806:4-808:14; 817:9-818:17; 822:21-25; 826:20-827:2; AR-I, 324, ¶4; 334, ¶¶2-3).

In addition, Dr. Swain's testimony confirmed that the intern administered a "screening" version of the WRAML-2 that was insufficient to properly measure CM's processing deficits in the auditory domain because CM's other test scores showed that further assessment of CM's processing was necessary. (TR-I, 378:4-19; 379:11-380:7; 380:25-382:15). The LSD's intern concluded that CM's WRAML-2 results were "in the average range." (AR-I, 258). The LSD's WRAML-2 results did not identify CM's processing deficits and were insufficient measure CM's verbal learning. (TR-I, 398:24-401:4). Defendants' contention that its WRAML-2 results were the same as those obtained by Dr. Swain misstates the evidence.[16] (Pt. MSJ, p.9:1-2; TR-I, 404:9-17). Dr. Swains evaluation confirmed CM's deficits in processing of auditory information impaired CM's ability to read and spell. (TR-I, 402:15-25).

The undisputed evidence showed that CM's auditory processing deficits and his related phonological processing deficits that the LSD identified concern a disability distinctly different from

---

difficulties (AR-1, 4-5, ¶¶ 16-16).

[15]Defendants misstate that the LSD's initial evaluation included evaluation of CM's auditory process and misstate that Plaintiffs concede this fact. The LSD's student intern testified that she did not evaluate auditory processing, but only evaluated his phonological processing. (TR-I, 134:20-135:24). Plaintiffs also dispute as fact Defendants contentions regarding CM's educational needs.

[16]Defendants misstate that Dr. Guterman administered the WRAML-2. (Pt. MSJ p.8:27-9:1). Dr. Guterman administered the WRAML, a different version of the test. (TR-I, 810:13-24).

CM's auditory processing disorder Dr. Loomos diagnosed. (TR-I, 588:2-11; 589:7-591:2).[17] Because professionals from different disciplines use the term "auditory processing" to mean different things, the distinction between auditory processing deficits and an auditory processing disorder may be obscured. However, the evidence established that the LSD's initial evaluation did not assess CM's auditory processing disorder, which is distinct from his processing deficits that were revealed in the LSD's initial evaluation and Dr. Swain's processing assessment. (AR-I, 257; 356-357).

CM's auditory processing disorder constitutes a "hearing impairment" under the IDEA. 34 C.F.R. § 300.8(c)(5).[18] CM's central auditory processing disorder, that Dr. Loomos diagnosed in 2007,[19] is distinguished from the "processing" assessments done by the LSD and Dr. Swain. (TR-I, 479:16-480:4).[20] It cannot be disputed that the LSD's intern was not qualified to assess CM's auditory processing disorder. (TR-I, 373:15-374:7; 375:3-376:6; 601:8-602:6). The LSD failed to submit evidence at hearing to demonstrate that its intern was qualified to assess CM in this area of disability. Undisputed evidence established that only an audiologist is qualified to conduct necessary testing to evaluate and diagnose CM's auditory processing disorder. (*Id.*). Thus, the evidence in the LSD's 2009 OAH case established that the LSD did not assess CM in all areas of suspected disability, as the IDEA requires. Nonetheless, Defendants cannot bring their motion here and it must be denied.

## IV. DEFENDANTS SEPTEMBER 25, 2008 ASSESSMENT PLAN DOES NOT SATISFY IDEA REQUIREMENTS FOR A DETERMINATION THAT REASSESSMENT WAS WARRANTED

Plaintiffs 2nd AC alleges in case C09–04624 SI that the ALJ both failed to resolve the correct issue, when he determined that the LSD was permitted to reassess CM, and that the process by which the

[17]Dr. Loomos also testified that absent "some sort of physical insult" CM's auditory processing disorder was not different at the time of her testing. (TR-I, 591:3-19; 593:18-594:4). The LSD did not submit evidence that a physical insult would have indicated a change.

[18]"Hearing impairment means an impairment in hearing, whether permanent or fluctuating, that adversely affects a child's educational performance but that is not included under the definition of deafness in this section." 34 C.F.R. § 300.8(c)(5).

[19]Dr. Loomos identified CM's auditory processing disorder impacted CM's ability in spelling, reading and phonics based upon distinct impairment in binaural integration and separation. (594:8-598:11).

[20]Dr. Sassone confirmed: ". . . auditory processing, as it exists in the law, under specific learning disability, is not synonymous with the auditory processing disorder that we were speaking earlier about with [Dr. Swain]." (TR-I, 480:1-4).

LSD generated the September 25, 2008 assessment plan violated IDEA requirements. These issues should be determined as a matter of law to hold that Plaintiffs were prevailing parties on the LSD's actual administrative complaint claim in LSD's 2009 administrative hearing, and that creation of the assessment plan violated the IDEA. However, Defendants again improperly seek to resolve that issue in the wrong case. Therefore, Defendants' motion for partial summary judgment must be denied.

Again, Defendants' motion for partial summary judgment on this issue must be denied even if it was in the proper case. The IDEA required the scope and need for a reevaluation of CM to be determined through the IEP process and for the LSD to provide written prior notice if the parties failed to agree through the IEP process. 20 U.S.C. § 1414(a)(2)[21], §1414(b),[22] §1414(c)(A-B).[23] The LSD's unilateral, coercive and factually inaccurate assessment plan of September 25, 2008, was invalid under the IDEA, as a matter of law. Moreover, the ALJ erred by introducing and deciding an issue that was not raised by the LSD's hearing complaint. (AR-I, 2-5; 204-206, 210-211).

Defendants argue that the ALJ in the LSD's administrative case was correct in determining that reassessment was warranted. However, "whether reassessment was warranted" was not the issue raised in the LSD's complaint. (AR-I, 4). Defendants argue that Plaintiffs did not question the reasons District offered to show "assessments would be useful." (Pt. MSJ p.23:19). However, the LSD bore the burden of proof on their claims that it was entitled to reassess CM, based upon his parents IEE request. The usefulness of a reevaluation was not the issue raised by the LSD's complaint.

The LSD's first complaint issue was whether Plaintiffs IEE request was untimely such that the LSD was entitled to reevaluate CM as a condition for requesting an IEE. (AR-I, 4:12-16).[24] The LSD administrative complaint also asserted that Plaintiffs' request for an IEE constituted the Parents' belief

---

[21]"Reevaluations. (A) In general. A local educational agency shall ensure that a reevaluation of each child with a disability is conducted in accordance with subsections (b) and (c) . . . ." *Id.*

[22]The [LEA] shall provide notice to the parents of a child . . . in accordance with . . .[§ 1415(c)]. *Id.*

[23]". . . as part of any reevaluation under this section, the IEP Team and other qualified professionals . . . shall - (A) review existing evaluation data on the child . . . (B) on the basis of that review, and input from the child's parents, identify what additional data, if any, are needed . . . ." §1414(c)

[24]" . . . Student's request for an IEE is not timely." (AR-I, 4:15-16).

that reassessment was warranted. (AR-I, 3:6-10).[25] The LSD proposed resolution of its issue as "If Parents Believe Conditions Warrant Reassessment, District Should be Allowed to Conduct the Assessment Proposed on September 24, 2008." (AR-I, 5). The LSD did not allege that reassessment was warranted under the IDEA criteria, but only because Plaintiffs requested an IEE. The LSD followed its premise with its argument that the LSD was entitled to reassess CM before CM's parents were permitted to seek an IEE. (AR-I, 3). The LSD's administrative complaint set forth its claim as follows:

> The District has the right to conduct its own assessment, with its own personnel, when conditions warrant, prior to a parent seeking an independent educational evaluation. . . . District seeks a determination that if Student's parents believe further evaluation is necessary the District should be allowed to proceed with the assessments proposed September 24, 2008.

(AR-I, 3:25-4:4). Thus, the LSD alleged that CM's parents' request for an IEE was the basis upon which reevaluation was warranted and that a reevaluation by LSD staff was a condition precedent because the IEE request was untimely.

The ALJ rejected the LSD's argument that the Parents' request for an IEE constituted a parent request for reevaluation by the LSD. The ALJ found that the assessment plan statement "was not correct, because Parents did not request that the District conduct the proposed assessments." (AR-I, 206, ¶ 47). The ALJ also concluded that Plaintiffs' IEE request was timely. (AR-I, 209, ¶9).[26] The ALJ then focused upon his "justifications" for a reevaluation. However, the OAH process by which Plaintiffs were expected to "justify" their disagreement with an assessment plan ignored the IDEA's mandatory IEP process for determining when reassessment is warranted and the ALJ's introduction of an entirely different issue violated the IDEA.[27] 20 U.S.C. §1414(c); §1415(f)(3)(B).[28]

---

[25]"Student's parents have apparently determined that Student's needs warrant reevaluation. This is evidenced by their request for an independent evaluation. In response to Student's parents' belief new assessment is needed, the District prepared an assessment plan and presented it to Student's parents. Student's parents have refused their consent to conduct the proposed assessment." (*Id.*)

[26]". . . California law provides that a request for a due process hearing 'shall be filed within two years . . . There is no more specific statutory limitation on the time in which a request for an IEE must be made." (*Id.*).

[27]The ALJ also improperly imposed the burden of proof on Plaintiffs.

[28]"The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7), unless the other party agrees otherwise." *Id.*

It is undisputed that the assessment plan was not based upon a review of data or IEP team consideration of what additional data were need as the IDEA mandates. The LSD's process prevented parent participation in the IEP process for deciding whether and why reevaluation might be warranted. Moreover, CM's parents could not provide "informed consent" to an assessment plan that misstated its basis as "Parent Request" or "Review Progress" when the undisputed reason for seeking reevaluation was Plaintiffs' request for an IEE. (AR-I, 3:6-10).

The ALJ altered the LSD's hearing issue and applied the wrong legal test. The ALJ stated: "the adequacy of the justifications for reassessment are measured under the separate legal test applied here." (AR-I 206, ¶47). However, the LSD's hearing issue was whether Plaintiffs' requested reassessment, and whether reassessment was a condition precedent to an IEE because the IEE request was untimely. The issue was not whether a reevaluation, before three-year mandatory review, was warranted. 20 U.S.C. §1414(a)(2)(B). The ALJ's "justification" test may apply if parents disagree, through the IEP process mandated by the IDEA, but not to the issues before him. The IDEA does not allow the LSD to circumvent the mandatory IEP process for determining whether and why reassessment was warranted.

CM's parents participated in an IEP team meeting a week before the LSD's special education administrator, who was not part of CM's IEP team, prepared the assessment plan. (TR-I, 430:21-431:3; 441:21-24). At the IEP team meeting no LSD staff member of the IEP team suggested or requested further assessment of CM or said any additional data were needed to develop measurable goals for CM. (TR-I, 722:2-22)[29]. To the contrary, LSD staff stated that its "universal assessments," SORT and Bear Spelling, provided the necessary information and that the LSD would draft new goals in one week. (TR-I, 736:12-737:6; TR-I, 741:22-742:25; AR-I, 282[30]; *see also* TR-I, 722:2-22).

Plaintiffs litigated the issues raised by the LSD in its OAH case and argued also that the assessment plan violated the IDEA. Plaintiffs argued that the LSD's use of the September 25, 2008 assessment

---

[29]The record demonstrates that CM's parents had requested a speech-language evaluation and binocular vision evaluation at the IEP meeting, which were agenda items. But the parents did not request the academic achievement, cognitive and social-emotional testing that Dr. Sassone later sought through the assessment plan as part of her negotiation strategy to prevent an IEE.

[30]The team meeting notes state, "Goals by 9/26/08 to address 5 essential areas of reading to be sent to parents." (AR-I, 262).

plan: (1) violated IDEA notice requirements by not setting forth the reasons reassessment was warranted or the data sought; and, (2) that a determination that reassessment was warranted before triennial review only can be made by IEP team familiar with the child's needs. (AR-I, 187:2-20)[31].

The ALJ's decision addressed an entirely different question. The ALJ found that "nothing in the law provides that inadequate prior written notice prevents an ALJ from allowing assessments to be conducted in a case in which a district filed the request for due process and there is a proper showing that circumstances warrant the assessments." (AR-I, 211). The ALJ weighed factors that favored an assessment "over Parents' objection" finding "conditions now warrant assessment," when the claim set forth in the LSD's administrative complaint and the test presumes a dispute through the IEP process. (AR-I, 5:4-5). The ALJ's decision of his alternative issue was error.

The IDEA required the need for additional data to be identified by the IEP team as the basis for a reevaluation before triennial review. The development and content of the LSD's September 25, 2008 assessment plan violated the IDEA's procedural and substantive requirements, as a matter of law, in addition to constituting prohibited retaliation under §504. Accordingly, Defendant's motion must be denied even if it was filed in the proper case.

## V. THE ALJ'S DECISION IN THIS CASE IS NOT ENTITLED TO DEFERENCE

The ALJ's Decision in Plaintiffs' underlying case here is replete with legal, procedural and factual errors and unwarranted of deference. The ALJ's legal interpretations are reviewed *de novo*. The Court's review will demonstrate that the ALJ's conclusions, including, that a school-psychologist intern is the equivalent of a credentialed school psychologist for purposes of interpreting and explaining an IDEA evaluation to CM's IEP team, and (2) his exclusion of evidence that satisfied IDEA requirements, was clear error. The ALJ's determination of whether the LSD's initial evaluation was appropriate, on limited evidence after the issue was time-bared, further demonstrates the decision was not entitled to deference. Multiple factual errors also show that the decision does not warrant deference.

For example, the ALJ found that Dr. Loomos, CM's audiologist, provided controversial Tomatis therapy. (AR-II, 418, ¶3). Actually, Dr. Swain provided Tomatis therapy that is supported by peer-

[31]Plaintiffs' closing brief stated: "The IDEA does not require . . . consent to a vague or undisclosed basis for proposed reassessment . . . .The district's 'determination' that reassessment was warranted . . . can be made by IEP team members who are familiar with the child's needs" *Id.*

reviewed research. (AR-II, 492, 504-505; 507-509; 658-673; 692-699). The ALJ concluded that CM's "core problem was with reading," ignoring his written language deficits. (AR-II, 418). The ALJ's reasoning that CM's experts cannot provide persuasive evidence because District staff had "experiential knowledge" in delivering ineffective services to CM for three years is not explained and is unreasonable. (AR-II, 418, ¶, 6). The ALJ also misstated CM's experts' testimony.[32] The ALJ's legal and factual errors cannot be overstated. Thus, the decision does not warrant deference.

## VI. DEFENDANTS' MOTION MUST BE DENIED AS TO COLLATERAL ISSUES ARGUED BUT NOT NOTICED

Interspersed with the points listed in their Notice, Defendants allege and argue facts and issues that were not raised in its Notice to this motion. Fed. R. Civ. Proc., Rule 7(b). These include claims that it was not required to provide RTI data to CM's parents and that Plaintiffs are not entitled to reimbursement for Dr. Guterman's IEE.[33] Plaintiffs address arguments to demonstrate some reasons for denying summary judgement on those points which can be identified. Plaintiffs nonetheless object to Defendants' raising issues in their brief which were not included in their Notice and request the Court to deny their motion as to any and all un-noticed matters raised in their brief or to order supplemental briefing.

The record refutes Defendants' contention that Plaintiffs caused delay or otherwise acted in a manner regarding the LSD and participation in CM's educational planning. CM's parents obtained additional evaluations, promptly shared them with the LSD and constantly sought to identify CM's educational needs. However, Defendants allegations do not appear relevant to or determinative of any issue in this case. Therefore, Plaintiffs do not address these claims here. In contrast, the LSD withheld important necessary and required information from CM's parents, particularly RTI data. The LSD's initial evaluation and its reports to CM's parents failed to accurately reflect CM's needs and academic performance in reading and writing.

---

[32]For example, the ALJ uses CM's mother's lay-description of what she observed during Tomatis therapy rather than Dr. Swain's testimony or report description. (AR-II, 418, ¶3, *compare* 504, 661-662).

[33]Defendants also allege, for example, that there is no evidence in the record that its failure to identify CM's dyslexia resulted in IEP defects. This is untrue. Dr. Guterman testified, at length, that the LSD's failure to identify and discuss CM's dyslexia made its initial evaluation report inaccurate and insufficient for the IEP team to identify his educational and related service needs. (TR-I, 817:9-818:17; 822:21-25; 826:20-827:2; AR-I, 324, ¶4; 334, ¶¶2-3).

## VII. THE IDEA REQUIRED THE LSD TO PROVIDE RTI DATA TO CM'S PARENTS

Defendants contentions that it was not required to provide response to intervention (RTI) data to CM's parents was not included in their Notice to their motion for partial summary judgment on assessment issues, and therefore must be denied. However, Defendants contention that they can withhold critical information from CM's parents about CM's educational progress through nearly two years of RTI, is inconsistent with express IDEA requirements, the IDEA's purpose of ensuring parent participation educational decisions, and withhold RTI data violates Plaintiffs' rights to educational records under the IDEA. 34 C.F.R. §300.311(a)(7);[34] 20 U.S.C. §§1400(c)(5)(B); 1400(d)(1)(A-B) & 1415(b). Defendants motion must be denied as a matter of law or based upon undisputed facts.

It is undisputed that CM participated in universal assessments, three times a semester, beginning in kindergarten. The LSD used its universal assessments to track CM and the effectiveness of its interventions. (TR-II, 1210:18-24; 1221:13-1222:11; TR-II 980:2-985:20, 1002:1-20[35]). Since 2005, the LSD identified children who were below benchmark levels of academic performance, requiring intensive and strategic level interventions, and tracked the effectiveness of the LSD's interventions with information maintained from assessment wall meetings. (TR-II, 1232:15-25).

Principal Maddox also confirmed that staff compiled notes for assessment wall meetings that were not maintained as part of the student's school file, but are used for staff discussion of the student's intervention needs. (TR-II, 1233:1234:12). School Principal Maddux testified that assessment wall notes and data were not shared with CM's parents, but that the LSD relies upon teachers to provide some information through dialog and report cards. (TR-II, 1233:8-1235:10). However, CM's report cards do not provide CM's performance data and do not identify instructional strategies or research-based interventions CM received, as the IDEA requires, nor do CM's report card narratives reveal CM's RTI

---

[34]"For a child suspected of having a specific learning disability, the documentation of the determination of the eligibility, must contain a statement of - . . . (7) If a child has participated in a process that assesses a child's response to scientific, research-based intervention – (i) The instructional strategies used and the student-centered data collected; and (ii) The documentation that the child's parents were notified about - (A) The State's policies regarding the amount and nature of student performance data that would be collected. . . (B) Strategies for increasing the child's rate of learning; and (C) The parents' right to request an evaluation. . . ." *Id.*

[35]The LSD's reading specialist describes screening instruments and progress tracking.

progress or intractable deficits.

CM received "guest" services in the form of small-group reading and writing interventions from a resource specialist in the LSD's intervention services program (ISP), for forty-five minutes, four days per week, and speech and language services from the District's speech and language pathologist from kindergarten until his eligibility determination. (AR-II, 901, ¶1). CM also received remedial services in reading and written language in summer before the first grade. (TR-II, 1255:5-1256:7). CM was pulled out of class for Ms. Jones' Resource class and for remedial reading services throughout first grade. (TRII 2415:19-21, 2416:12-15). Throughout this process, LSD staff collected and weighed RTI data on CM's academic progress using specific types of interventions that were not disclosed to CM's parents.

CM's initial IEP Eligibility Summary references that CM participated in RTI and that his "learning problem [was] corroborated by other assessment data." (AR-II 923,¶V). But, no prescribed "documentation" was included with the IEP. The IEP also cites documents that were provided as the parents' notification of items required by IDEA regulation 300.311(a)(7). (AR-II, 924, ¶VII). For example, the Eligibility Summary lists CM's "goals" as parent notice of "strategies for increasing the child's rate of learning." (*Id.*). However, CM's goals did not identify any strategies to be used. (AR-II 915-916). CM's parents did not receive RTI data that the LSD staff relied upon to form their opinions and no data or discussions were documented in the IEP. Therefore, CM's parents could not participate meaningfully in decisions regarding appropriate special education services to address CM's unique needs.

CM's kindergarten report card reflects some below grade level rankings in reading and decoding sight words, but did not convey information regarding reading problems discussed at "assessment wall" meetings or RTI data shared between staff. (AR-II, 528-529). At the beginning of CM's first grade year, District staff met, on October 12, 2006, to discuss CM, without CM's parents. (AR-II 537; TR-II 2445:18-2447:2). LSD staff discussed CM's "assessment wall" data in connection with CM's teacher's referral of CM for a special education evlauation. (*Id.*; TR-I, 679:24-681:17). Ms. McClure, CM's first grade teacher, attended "assessment wall" meetings and confirmed that staff discussed methodology and CM's response at the meetings and that staff took notes and "sent those out to each other just to formalize what we talked about at the meeting." (TRII 2434:6-2435:6). Staff discussed CM's intensive

needs, as reflected on the "assessment wall" but CM's parents did not share these closed discussions. (AR-II, 537; TR-II, 1261:5-11).

The record demonstrates that CM was receiving reading lab services and was below grade-level in reading each trimester of first grade. (TR-II, 2416:7-25; AR-2, p. 530, *see also* AR-1, 391). Ms. McClure testified that it was "hard to show progress" on CM's report cards because each trimester report concerned a different set of standards and benchmarks" that were being reported. (TRII 2417:1-6). Ms. McClure reported CM as "Excellent" in the category of "(f) Reads and responds to literature," because CM responded well to his teacher reading aloud and was enthusiastic "wanting to check out books on science." (TRII 2418). CM's report card reflected "Excellent" because he was graded on "how enthusiastically" he participated in Science and Social Studies. (TRII 241:17-2420:12). The report cards did not provide CM's parents with "student-centered" RTI data that showed his ongoing need for intervention and lack of grade-level progress after the LSD's interventions. CM's first grade report card presents glowing commentary, without RTI data or assessment wall reports. (AR-II, 531).

The LSD's initial evaluation report avoided mentioning CM's low cognitive measures by characterizing his performance as "within average range." (TRI, 256; ARI, 804:20-806:11). The narrative mentions "relative weakness" and "some difficulty," but does not describe CM's "low average" or "borderline" on the intern's cognitive testing using the WISC-IV. (*Id.*). Nor does the intern comment that CM's cognitive abilities would account for slow academic progress. The report does not mention RTI data collected on CM or his response to interventions used in the LSD's resource class while CM was a "guest."

CM's RTI data was important to LSD staff for their understanding of CM's needs and CM's parents needed and were entitled to the same access to the RTI information and data. (Pt. MSJ p.10:18-20).[36] The LSD's withholding of "assessment wall" data violated the IDEA and prevented CM's from questioning the effectiveness of the LSD's proposed IEP services. Whether RTI was used as the basis of the team's eligibility decision on the IEP document is irrelevant and the LSD controlled whether it used RTI data or discrepancy to determine eligibility. The IDEA required the LSD to share

[36]"OAH found that '[b]ecause of their history with Student through the RTI and SST process, District staff was well aware of Student's suspected areas of disability at the time they assessed his special education eligibility.'" (Pt. MSJ 10:18-20).

RTI information because CM participated in RTI. The ALJ's contrary conclusion was error as a matter of law. (TR-II 425). Thus, even if the IDEA did not require the LSD to provide assessment wall and RTI data to CM's parents as a matter of law, that information was necessary to their meaningful participation as members of CM's IEP team for deciding whether the LSD's proposed future interventions could be expected to be more effective than those he received prior to being found eligible for special education and related services. Accordingly, Defendants' motion for summary judgement finding CM's parents were not entitled to RTI data must be denied.

## VIII. CONCLUSION

Defendants' motion for partial summary judgment on "assessment issues" does not lie in this case. Defendants' argument, that CDE's closure of its compliance investigation did not violate the IDEA, is irrelevant because Defendants' conduct regarding that matter is based upon unlawful retaliation in violation of § 504, after the Court's dismissal of IDEA claims regarding that conduct. Defendants other requests for partial summary judgment exceed its notice and therefore are not properly before the Court. For these reasons alone, the Court must deny Defendants' motion. However, based upon the foregoing, Defendants' motion also must be dismissed on assessment claims, as a matter of law. Defendants' motion for partial summary judgment concerning claims that arise in this case also must be denied, as a matter of law and based upon the record. Defendants' violated the IDEA by withholding mandatory RTI information from CM's parents. *Res judicata* bars Defendants' attempt to dispute Plaintiffs' entitlement to IEE reimbursement. Thus, Defendants' motion for partial summary judgment must be denied.

Dated: October 21, 2011

Respectfully submitted,

/s/ *Lina Foltz*

Lina Foltz, Attorney for Plaintiffs