United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M. & E.M., | No. CV 09-4624 and 10-04223 |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PARTIES' MOTIONS FOR ATTORNEYS' FEES** |
| v. | |
| LAFAYETTE SCHOOL DISTRICT, | |
| Defendant. _____/ | |

The parties have both moved for attorneys' fees in this appeal from a California Office of Administrative Hearings ("OAH") decision. This appeal is consolidated with *M.M. v. Lafayette School District*, CV 10-4223 SI, an appeal from a different OAH decision. Judgment was entered in both appeals on March 8, 2012. The parties move for attorneys' fees in this case only, 09-4624, though Defendant's motion is also based on the duplicative nature of some of Plaintiffs' claims in 10-4223. The Court entered judgment in both cases for defendant on all issues except one - the issue of reimbursement for presentation of assessment results at a meeting. After review of the parties' arguments, and for good cause shown, the Court GRANTS IN PART and DENIES IN PART both motions. Because the fees the Court awards offset each other, neither party is liable to the other for fees.

**BACKGROUND**

The complex factual and procedural background of these appeals is set forth in detail in the Court's February 7, 2012 Order Re: Parties' Cross Motions for Summary Judgment and Defendant's Motion to Strike (the "Summary Judgment Order"). Dkt. 122. That order, which resolved the cross motions for summary judgment in both appeals, was the culmination of a number of other Orders in this case relevant to the attorneys' fees motions. This includes the February 1, 2010 Order Denying

United States District Court
For the Northern District of California

Plaintiffs' Motion for a Temporary Restraining Order (dkt. 36); the June 2, 2010 Order Re: Defendants' Motions to Dismiss (dkt. 60); the December 6, 2010 Order Re: Lafayette Defendants' Motion to Dismiss and Motion for Sanctions and DGS Defendants' Motion to Dismiss (dkt. 83), all issued in 09-4624; as well as the March 3, 2011 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss And/Or Strike and Denying Defendants' Motion for Sanctions (dkt. 28) issued in 10-4223. The Court will restate only the factual and procedural background necessary for the instant motions for attorneys' fees.

As the Court noted in the Summary Judgment Order, at base, this matter involved a young boy's struggle to read proficiently. Plaintiff C.M. is an 11-year old child who enrolled in the defendant District at the beginning of his kindergarten year in 2005-2006. Early in C.M.'s grade school career, he was identified as an individual with learning disabilities. In April 2007, the spring of C.M.'s first grade year, the District conducted a psychoeducational assessment of C.M. (the "April 2007 Assessment"). Seventeen months later, in September 2008, M.M. and E.M. ("Parents"), voiced their first disapproval with the April 2007 Assessment and requested an independent education evaluation ("IEE"). When the District did not immediately grant the IEE at public expense, plaintiffs (M.M., E.M., and C.M.) filed a compliance complaint with the California Department of Education ("CDE"). This was the first volley in what ballooned to years of litigation in multiple administrative and federal cases.

Pursuant to governing regulations, the District then filed a due process complaint requesting a hearing before the OAH, forming OAH I.[1] OAH I asked the Administrative Law Judge ("ALJ") to determine the validity of the District's April 2007 Assessment, whether the District was liable to reimburse C.M.'s parents for the IEE, and whether the District had a right to conduct its own reassessment of C.M. After a hearing, ALJ Charles Marson issued a decision on July 1, 2009, finding the District unlawfully delayed granting the IEE at public expense, but that plaintiffs were entitled to reimbursement of only half the expenses associated with the IEE because they had delayed 17 months

---

[1] One of plaintiffs' central contentions in this case was that the District's filing of a due process complaint was retaliatory, in violation of Section 504 of the Rehabilitation Act. The Court ruled against plaintiff on this issue in various ways throughout the litigation, culminating in judgment in being entered in favor of the District on the issue March 8, 2012. Defendants' motion for attorneys' fees largely focuses on this claim.

1    before voicing their disagreement with the April 2007 Assessment.  ALJ Marson found, in a footnote,

2    that plaintiffs were not entitled to reimbursement for the expense of the evaluator (Dr. Guterman)

3    presenting her assessment results at an Individual Education Program ("IEP") meeting.  He also

4    determined that the District had a right to proceed with a new assessment.  He found it unnecessary to

5    rule on whether the 2007 Assessment was valid, because he had determined that the plaintiffs were due

6    reimbursement regardless of the merits of the 2007 Assessment.  ALJ Marson stated that Plaintiffs

7    prevailed on the issue of their entitlement to reimbursement and the issue of whether the District failed

8    to timely respond to C.M.'s request for an IEE; the District prevailed on its right to proceed with new

9    assessments; and nobody prevailed on the issue of whether the April 2007 assessment was appropriate,

10   as it was not decided.  This decision forms the basis of Plaintiffs' complaint in the instant case, *M.M.,*

11   *et a., v. Lafayette School District, et al.,* No. 09-4624 (the "OAH I Appeal").

12        It is the OAH I Appeal, by and large, that is relevant to the fee motion.  Nevertheless, the Court

13   will briefly describe the rest of the vast litigation between the parties.  Before ALJ Marson issued his

14   decision on July 1, 2009, Plaintiffs filed a due process complaint of their own ("OAH II") to address

15   a number of other complaints, such as whether the District timely identified and evaluated C.M. for

16   possible disabilities and, again, whether the April 2007 assessment was appropriate.  On May 13, 2009,

17   ALJ Peter Paul Castillo determined that a number of Plaintiffs' claims were time barred and granted the

18   District's motion to dismiss those claims.  This dismissal order forms the basis of Plaintiffs' complaint

19   in *M.M., et. al. v. Lafayette School District*, No. 09-3668 SI ("2009 OAH Interim Appeal").  This Court

20   dismissed plaintiffs' complaint without prejudice in the 2009 OAH Interim Appeal on the grounds that

21   ALJ Marson had not yet issued a final decision, noting that "allowing plaintiffs to appeal aspects of the

22   due process proceedings in a piecemeal fashion would run counter to the IDEA and would hinder

23   effective resolution of the administrative proceedings." No. 09-3668 SI, Dkt. 53, at 4. The Ninth Circuit

24   has since affirmed that decision.  *See M.M. v. Lafayette School District*, No 10-16903 (9th Cir. Jun. 6,

25   2012).

26        On August 28, 2009, following ALJ Marson's decision in OAH I, Plaintiffs filed a third due

27   process complaint with the OAH ("OAH III"), which was consolidated with the remaining issues of

28   OAH II (as consolidated, "OAH II/III").  The OAH II/III case asked, *inter alia*, whether C.M. was

provided a free and appropriate education (a "FAPE") from April 2007 through June 2009, and, if not, whether C.M. was entitled to receive reimbursement or compensatory education.  Plaintiffs raised 35 contentions that the District failed to provide C.M. a FAPE.  On June 21, 2010, ALJ Gary Geren, after eleven days of hearing, issued a 48-page decision in favor of the District on all issues.  That decision forms the basis of plaintiffs' complaint in *M.M. et al. v. Lafayette School District, et al.*, No. 10-4223 (OAH II/III Final Appeal").  On appeal, this Court found in favor of the District on all issues in the OAH II/III Final Appeal.  *See* Summary Judgment Order, 18-48.

Returning to OAH I, as noted, Plaintiffs appealed the decision to this Court, forming the OAH I Appeal, 09-4624.  Plaintiffs argued that ALJ Marson erred by failing to award to plaintiffs the full cost of the IEE, including the evaluator's attendance at the IEP Team meeting to review the findings; that the District's student intern was not qualified to conduct C.M.'s initial evaluation and therefore the District's evaluation was inadequate as a matter of law; that ALJ Marson erred in finding that the District could reassess C.M. pursuant to an assessment plan created the District's Administrator; that the District failed to satisfy its burden of proof to show its initial evaluation C.M. was appropriate under the IDEA; and that ALJ Marson erred as a matter of law "to the extent he added or altered issues decided in his decision that were not raised in the District's administrative complaint."  *See* Summary Judgment Order at 9, n. 8 (citing Pl.'s MSJ I). Beyond the direct appeal from the issues decided by ALJ Marson, the OAH I Second Amended Complaint ("SAC") contained claims for retaliation pursuant to Section 504 of the Rehabilitation Act, as well as for violations of procedural safeguards of the IDEA; for substantive violations of the IDEA; for discrimination under Section 504; for violations of the Fourteenth Amendment by the District in seeking to reassess C.M.; for violations of the Fourteenth Amendment and the IDEA due to the District's request to stay the CDE investigation; and for violations of the Fourteenth Amendment and the IDEA by the California Department of General Services ("DGS") for failure to exercise proper oversight over OAH.  In the various orders on motions to dismiss and summary judgment, the Court ruled against plaintiffs on all claims except one - that ALJ Marson erred by not awarding the $800 cost of the evaluator's attendance at an IEP meeting.  The Court otherwise dismissed plaintiffs' claims, found them moot due to the District's later payment of the cost of the IEE and its agreed-to assessment of C.M., or entered summary judgment in the District's favor.

Nevertheless, plaintiffs argue that they were the prevailing party and move for attorneys' fees. The District, on the other hand, seeks attorneys' fees for defense of the claims of retaliation pursuant to Section 504 of the Rehabilitation Act and the claims regarding violations of procedural safeguards of the IDEA.

**LEGAL STANDARD**

**1.      District's Motion**

The Rehabilitation Act provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b).  Attorneys' fees can be awarded under the Rehabilitation Act to a prevailing defendant where the plaintiff's claim was "frivolous, unreasonable, or groundless or . . the plaintiff continued to litigate after it clearly became so." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1977); *see also Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1154 (9th Cir. 1997).

**2.      Plaintiffs' Motion**

The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i);  *see Aguirre v. Los Angeles Unified School Dist.*, 461 F.3d 1114, 1117 (9th Cir. 2006). In order for a court to award attorneys' fees, the parent must (1) be a "prevailing party" and (2) seek "reasonable attorneys' fees." *Aguirre*, 461 F.3d at 1117.

To be considered a "prevailing party" there must be a "material alteration of the legal relationship of the parties." *Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th. Cir. 2004) (*citing Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 (2001)). "A prevailing party is one who succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir. 2007) (citing *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1498 (9th Cir.1994)).  The success must materially alter the parties' legal

relationship, cannot be *de minimis* and must be causally linked to the litigation brought. *Id.* (citing *Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1034-37 (9th Cir.2006)).

Where a plaintiff is determined to be a prevailing party, a denial of attorney's fees should only occur "when special circumstances exist sufficient to render an award unjust." *Thomas v. City of Tacoma*, 410 F.3d 644 (2005). To determine whether "special circumstances" exist, the Court should look at (1) whether allowing attorney fees would further the purposes of the statute, and (2) whether the balance of the equities favors or disfavors the denial of fees. *Id.*

If a plaintiff achieves only partial success, the Court must analyze the "degree of success" achieved in order to determine the amount of attorneys' fees plaintiff is entitled to. *Aguirre v. Los Angeles Unified School District*, 461 F.3d 1114, 1119-20 (9th Cir. 2006) (applying *Hensley v. Eckerhart*, 461 U.S. 424 (1983) to IDEA claims). "A reduced award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 416 U.S. at 440. "In some circumstances, even a plaintiff who formally 'prevails' . . . should receive no attorney's fees at all." *Farrar*, 506 U.S. 103, 115 1992).

Finally, the court may reduce attorneys' fees where the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy. § 1415(i)(3)(f)(i).

## DISCUSSION

The District moves for $75,569.50 in attorneys' fees arising from its defense of Plaintiffs' retaliation and procedural IDEA claims. Plaintiffs seek $261,727.12 in attorneys' fees arising from its litigation of this action (the OAH I Appeal) in both the administrative and District Court venues. The Court will first address the District's motion for attorneys' fees, and then turn to the Plaintiffs' motion. The Court will then address calculations as to the amounts owed.

### 1.    District's Motion

In both of the consolidated cases, Plaintiffs alleged that the District retaliated against them by filing for due process and "seeking to compel reassessment" of C.M in violation of § 504 of the

6

Rehabilitation Act.  Plaintiffs also alleged procedural violations of the IDEA.  The District argues that both sets of claims were "frivolous, unreasonable, or groundless"  and plaintiffs "continued to litigate after it clearly became so," and, therefore, the District is owed attorneys' fees.  Def.'s Mot. at 6 (*citing Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1977)).  The Court first addresses the retaliation claims, and then turns to the IDEA procedural violation claims.

The retaliation claims arose from each of the following actions: the District's filing for due process following Plaintiffs' request for an IEE, the CDE's stay of Plaintiffs' compliance complaint following that filing, and the District's seeking reassessment of C.M. in the due process complaint.  Plaintiffs characterized all of these as retaliatory acts for "advocating on behalf of C.M. and requesting a complaint investigation from CDE . . ."  SAC ¶ 113.

On June 2, 2010, the Court dismissed plaintiffs' claims against the CDE for staying its investigation, because an IDEA implementing regulation required the CDE to do so.  June 2, 2010 Order at 10 (*citing* 34 C.F.R. § 300.152(c)(1) ("If a written complaint is received that is also the subject of a due process hearing . . . , the State must set aside any part of the complaint that is being addressed in the due process hearing until the conclusion of the hearing.")).  On December 6, 2010, the Court denied the District's motion to dismiss Plaintiffs' § 504 retaliation claim against the District.  Dkt. 83 at 6-8.  The Court noted that "Plaintiffs may well have a difficult time proving that compelling reassessment is an adverse action, [but] their allegation of an adverse action is sufficient to survive a motion to dismiss."  *Id.* at 7.  At summary judgment, the Court found for the District on the retaliation claim, because an IDEA implementing regulation allowed the District to file for due process in the face of an IEE request.  Summary Judgment Order at 46 (citing 34 C.F.R. § 300.502(b)(2)) ("If a parent requests an IEE at public expense, the public agency must, without unnecessary delay, either (i) file a due process complaint to request a hearing to show that its evaluation is appropriate, or (ii) ensure that an IEE is provided at public expense.").

While the Court finds that the retaliation claims bordered on frivolous, the Court did find at least one version of the claims sufficient to survive a motion to dismiss.  The implementing regulation that allows a district to file for due process following an IEE request requires that it do so "without unnecessary delay."  34 C.F.R. § 502(b)(2).  Parents requested an IEE on September 17, 2008.  *See*

1  OAH I Decision, at 5 (¶ 13).  The District did not file for due process until December 3, 2008, a 74-day

2  delay.  *Id.* at 7 (¶ 18).  ALJ Marson found that the District did, in fact, act with unnecessary delay.  *Id.*

3  at 15 (¶ 8).  A reasonable legal argument could be made that an unnecessarily delayed due process

4  complaint acts as a form of retaliation, particularly in light of the fact that the CDE is then required to

5  stay a parent's compliance complaint.  The Court finds that the argument, though legally incorrect, is

6  not so frivolous as to warrant attorneys' fees.  *See Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (to establish

7  fees, "the plaintiff's action must be meritless in the sense that it is groundless or without foundation.

8  The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the

9  assessment of fees.").  The District's motion with respect to the Section 504 claims is DENIED.

10  The District also seeks attorneys' fees with respect to plaintiffs' IDEA procedural violation

11  claims.  The SAC in the OAH I Appeal alleges violations of procedural safeguards of the IDEA.  *See*

12  SAC ¶ 112.  Plaintiffs maintained that the IDEA provides an express or implied right of action to

13  enforce IDEA procedural safeguards.  The Court rejected this argument in the December 6, 2010

14  dismissal order:

15  Plaintiffs argue that 20 U.S.C. § 1415(i)(2) provides an express right of action
for plaintiffs to bring this claim.  It does not.  Section 1415(i)(2) permits suit
16  by parties aggrieved by findings and decisions made under Subsections (f), (k)
and (i) of Section 1415, not under Subsections (a) and (b).  Plaintiffs argue that
17  Section 1415(i)(2) must provide an express right of action to enforce
Subsections (a) and (b) (as interpreted by 34 C.F.R. § 300.502(b)(2)(i)),
18  because otherwise "§ 1415 procedural safeguards necessary for a FAPE would
be illusory."  Opp. Br. 5.  The Court disagrees.  Plaintiffs say that they already
19  challenged Dr. Sassone and the Lafayette defendants' response to their request
for an IEE at the due process hearing.  *See* SAC ¶ 74.  Plaintiffs are entitled to
20  seek review of the ALJ's decision at the due process hearing.  And in fact, in
seeking review of the ALJ's decision in claim one in this case, plaintiffs raise
21  their concerns over the Lafayette defendants' response to their IEE request.
*See* SAC ¶ 96.
22
Next, plaintiffs argue that IDEA grants them an implied right of action to
23  enforce IDEA procedural safeguards.  Plaintiffs cite no case recognizing an
implied right of action to enforce provisions of the IDEA.  Nor would
24  recognition of an implied right of action be consistent with 20 U.S.C. § 1415,
the very section of the IDEA cited by plaintiffs, which explicitly requires
25  parents to raise concerns in administrative hearings and then provides an
express right of action for review of the administrative determinations.  *See*
26  *Cannon v. University of Chicago*, 441 U.S. 677, 688 n.9 (1979) (discussing
factors for determining whether a statute provides for an implied right of
27  action).  The IDEA claim is DISMISSED with prejudice.

28  Dec. 6, 2010 Order Re: Lafayette Defs.' Mot. to Dismiss, dkt. 83.

United States District Court
For the Northern District of California

Plaintiffs had alleged similar violations of IDEA procedural safeguards in the OAH II/III Appeal. *See* 10-4223, SAC ¶¶ 215-222. That complaint was filed prior to the Court's December 6, 2010 Order dismissing those claims from the OAH I Appeal. Following the Dec. 6th Order, the parties agreed to the consolidation of the two cases. *See* Dkt. 10 in 10-4223. The parties then engaged in discussions to stipulate to dismiss duplicative claims that the Court had already dismissed, including the IDEA procedural violations. The District attaches that correspondence. Levine Decl., Exs. C-E. When the District asked that plaintiffs dismiss the procedural IDEA claims, plaintiffs refused. In a letter to defense counsel, plaintiffs' attorney stated that she "agreed that Judge Illston would dismiss claims in my clients' First Amended Complaint for case C10-4223 which were identical to those previously dismissed in case C09-4624. However, I believe that employing a stipulation to dismiss identical claims will impair my clients' right to appeal the dismissal of such claims in their case C10-4223 . . . I believe that the procedural mechanism to accomplish this change in the pleading and preserve my client's rights to appeal must be the court's dismissal in connection with your clients' motion to dismiss those and any other claims that your client seeks to dismiss." Levine Decl., Ex. E (Jan. 17, 2011 Letter). The District thereafter brought a motion to dismiss, again setting forth the reasons why plaintiffs' IDEA procedural claims should be dismissed. *See* Def.'s Mot. to Strike And/Or Dismiss Pl.'s FAC, 10-4223, Dkt. 12-1, at 3-4. On March 3, 2011, the Court dismissed those claims from the OAH II/III Appeal complaint, citing the December 6, 2010 Order in the OAH I appeal. *See* Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss And/Or Strike, 10-4223, dkt. 28, at 3-4.

The District argues that it should receive attorneys' fees for its defense of procedural IDEA claims from their inception in the original OAH I complaint, as the Ninth Circuit has repeatedly held that a violation of the IDEA may only be pursued via administrative complaints. Def.'s Reply at 7 (*citing Witte v. Clark Co. Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999) (the IDEA confers on district courts "the power to give all 'appropriate relief,' . . . [which] is usually construed as a mere grant of jurisdiction to enforce and supplement the administrative procedures . . ."). The Court does not agree that plaintiffs' claims were frivolous from inception, but does agree that plaintiff continued to litigate them after they became so. *See Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1977).

United States District Court
For the Northern District of California

1    The Court consolidated the cases soon after the December 6, 2010 Order; it was unnecessary at that

2    point to require the defendant and the Court to re-engage in dismissal of claims that had already been

3    dismissed with prejudice.  The District is therefore owed attorney's fees for at least that portion of their

4    defense in the OAH II/III Appeal.  The Court therefore GRANTS the District's motion with respect to

5    its defense of procedural IDEA claims in the OAH II/III Appeal.  The Court will address the calculation

6    of those fees below.

7         In sum, the District's motion for attorneys' fees is GRANTED IN PART and DENIED IN

8    PART.  It is granted with respect to their defense of the IDEA procedural violation claims; it is denied

9    with respect to the § 504 Rehabilitation Act retaliation claims.

10

11

12   **2.    Plaintiffs' Motion**

13        Plaintiffs move for attorneys' fees for the entirety of their prosecution of both the administrative

14   and District Court complaints in the OAH I Case.  Plaintiffs seek $55,640 for fees and costs incurred

15   in the OAH hearings, and $206,707.12 for fees and costs in the District Court case, for a total of

16   $261,727.12.  Plaintiffs argue that they are the prevailing party in this matter, "having successfully

17   obtained the relief sought in this action, full payment for the cost of CM's IEE and termination of

18   Defendants' efforts to evaluate C.M. pursuant to an assessment plan that Plaintiffs contended

19   contravened Plaintiffs' rights under the IDEA."  Pls.' Not. of Mot., 1.  The District  argues that because

20   "plaintiffs filed three District Court actions in this matter and came away with judgment in one of the

21   three for $800," they should not be awarded the $260,000 in attorneys' fees and costs they seek.  Defs'.

22   Opp. at 1.  The District also argues that because a statutory offer of settlement was made prior to the due

23   process hearing and rejected by plaintiffs, all fees that could have been recovered after that offer - on

24   April 20, 2009 - are barred.  *Id.*

25        The Court addresses the latter argument first.

26

27   **a.    The Ten Day Offer**

28        Under the IDEA, attorneys' fees and costs may not be reimbursed for services performed

subsequent to the time of a written offer of settlement to a parent if (i) the offer is made more than 10 days before the proceeding begins, (ii) the offer is not accepted within 10 days, and (iii) the Court finds that the relief finally obtained by the plaintiffs is not more favorable to the plaintiffs than the offer of settlement. 20 U.S.C. § 1415(i)(3)(D)(i).

On April 20, 2009, ten days before the April 30, 2009 hearing, the District faxed to plaintiffs a settlement offer (1) reimbursing plaintiffs up to $5,600 in "educational expenses incurred during the 2008-2009 school year," (2) withdrawing the due process case and not pursuing its right to conduct new assessments, and (3) reimbursing plaintiffs for reasonable attorneys' fees. Garcia Decl., Ex. A. The offer required plaintiffs to withdraw their request for an IEE. *Id.* This offer meets the first prong of § 1415(i)(3)(D)(i), because the final relief Plaintiffs obtained was not more favorable than this offer - the final judicially obtained relief was $3,200, and Plaintiffs lost on the issue of whether the district could reassess C.M.

However, the second prong requires that the plaintiffs do not accept the offer. As with most issues involving the attorneys' methods of litigation in this case, this issue is complicated. Plaintiffs, through their attorney Lina Foltz, responded to the offer the next day. Ms. Foltz stated that "the District's item #1 attempts to resolve the currently pending case by offering the family reimbursement for compensatory education services, a remedy which is not at issue in this case . . . [T]he family is willing to accept the amount of $5,600, as reimbursement for [C.M.]'s independent educational assessment, along with the other terms of the District's offer. However, the family is not willing to impair their rights to a remedy in their separate due process hearing as part of the settlement of this case." Garcia Decl., Ex. B. Ms. Foltz apparently believed that characterizing the $5,600 reimbursement as for "compensatory education services" would prejudice her clients' rights to such services in the OAH II case. Ms. Foltz therefore asked that the District "re-characterize its reimbursement amount," as for the IEE, not for "compensatory education services." *Id.* Following Ms. Foltz's letter, the appropriate response by the District would have been to discuss this counter-offer. Instead, the District faxed a letter to plaintiffs stating simply that, "it appears from your response that the family is rejecting the offer of settlement. The District's offer remains as outlined in the letter sent from my office to yours . . ." Garcia Decl., Ex. C.

United States District Court
For the Northern District of California

1    This litigation should have ended with that settlement offer. The IDEA envisions that the parties

2    to a dispute should resolve their differences cooperatively. *See El Paso Indep. Sch. Dist. v. Richard R.*,

3    591 F.3d 417, 425-26 (5th Cir. 2009)*, citing Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 53, 126

4    S.Ct. 528, 163 L.Ed.2d 387 (2005) ("The core of the [IDEA] is the cooperative process that it establishes

5    between parents and schools."). However, the fact that it did not do so is the fault of both parties and

6    is consistent with how they pursued litigation in this matter. Plaintiffs did not accept the offer based on

7    Ms. Foltz's fear that the phrase "educational expenses" would somehow prejudice her clients' rights in

8    a completely separate due process claim filed by plaintiffs. On the other hand, the District rejected (or

9    simply ignored) a counter-offer that accepted nearly all of the terms of its offer. Under these

10   circumstances, the ten-day offer bar is not triggered, as plaintiffs' actions fall within the exception to

11   the bar set forth in § 1415(i)(3)(E), allowing for rejection where plaintiffs are "substantially justified."

12   The Court will therefore proceed with a prevailing party analysis.

13

14   **b.     Prevailing Party Status**

15       The Court must first determine whether plaintiffs were the prevailing party. The Court can then

16   inquire into whether it should exercise its discretion to grant fees, and, if so, determine what would

17   constitute reasonable fees. *See, e.g., J.M. v. Capistrano Unified School Dist.*, 2011 WL 1326905, *2

18   (C.D. Cal. Mar. 31, 2011).

19       For the purpose of attorneys' fee awards, a prevailing party is defined as "a party which succeeds

20   on any significant issue in litigation which achieves some of the benefit the parties sought in bringing

21   suit." *Anaheim Union*, 464 F.3d at 1034. A party is "prevailing" where it can "point to a resolution of

22   the dispute which changes the legal relationship between itself and the defendant." *Id.* (*citing Tex. State

23   Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)). "The success must materially

24   alter the parties' legal relationship, cannot be de minimis and must be causally linked to the litigation

25   brought." *Van Duyn v. Baker Sch. Distr.*, 502 F.3d 811, 825 (9th Cir. 2005). "The prevailing party

26   inquiry does not turn on the magnitude of the relief obtained." *Id. (*citing Farrar *v. Hobby,* 506 U.S. 103,

27   111 (1992).

28       Here, at the OAH level, plaintiffs succeeded in winning half the cost of their IEE – $2,400. At

United States District Court
For the Northern District of California

1    the District level, plaintiffs succeeded in winning the cost of the presentation of that IEE – $800.  Like

2    ALJ Marson, the Court finds that plaintiffs were the prevailing party on the issue of whether they were

3    entitled to reimbursement for the IEE due to the District's failure to timely respond to C.M.'s request

4    for an IEE.  The District's OAH I Due Process Complaint raised only 3 issues - whether the April 2007

5    assessment of C.M. complied with legal requirements, whether the District had a right to assess C.M.

6    pursuant to the September 2008 assessment plan, and whether Plaintiffs were entitled to reimbursement

7    of the IEE.  Prevailing on the latter issue was sufficiently "significant" to warrant determination of

8    prevailing party status for this case.  *See Anaheim Union*, 464 F.3d at 1036 ("[A] prevailing party need

9    not prevail on what may be considered the 'central' issue of the case . . . as long as the party had

10   prevailed on any significant issue" prevailing status is warranted.).   Similarly, victory on the

11   presentation issue warrants a determination of prevailing status in this appeal.  *Id.*

12

13              c.      **Reasonable Attorneys' Fees**

14          After determining prevailing party status, the Court turns to the extent of plaintiff's victory.  *See*

15   *Aguirre v. Los Angeles Unified School Dist.*, 461 F.3d 1114, 1120-21 (9th Cir. 2006) (holding that

16   amount of attorneys' fees under IDEA is contingent upon the degree of success the parent attained on

17   her claims); *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) ("The bulk of discretion

18   retained by the district court lies in the second, significance of relief, inquiry.").  The Supreme Court

19   has stated that "the most critical factor in determining the reasonableness of a fee award is the degree

20   of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (applied to IDEA claims in

21   *Aguirre*, 461 F.3d at 1121); *see also Van Duyn v. Baker School Dist. 5J*, 502 F.3d 811, 826 (9th Cir.

22   2007) (remanding to district court for determination of attorney's fees and noting district court's

23   discretion to consider that plaintiff prevailed on only one issue).  Courts in the Ninth Circuit regularly

24   reduce fee awards in IDEA cases based on limited degrees of success.  *See J.M. v. Capistrano*, 2011 WL

25   1326905, *4 (C.D. Cal. Mar. 31, 2011) (reducing fees by 66.7% where plaintiffs prevailed on two out

26   of twenty-two issues which resulted in $79,000 in compensation); *S.A. v. Tulare County Office of Educ.*,

27   2009 WL 4048656, *7 (E.D. Cal. Nov. 20, 2009) (reducing fees by 90% where plaintiffs achieved

28   partial success on an issue that was unrelated to the substantial issues litigated).

United States District Court
For the Northern District of California

1    The claim plaintiffs prevailed on is reimbursement for the IEE.  The rulings at the administrative

2   and District level on that claim were as follows.  A parent has the right to an IEE at public expense if

3   the parent disagrees with an evaluation obtained by the public agency.  *See* Summ. Judg. Order at 16

4   (citing 34 C.F.R. § 300.502(b)(1)).  Once the parent requests an IEE, the District must, "without

5   unnecessary delay," either file a due process complaint or ensure the IEE is provided at public expense.

6   34 C.F.R. § 300.502(b)(2).  ALJ Marson found that the District, by waiting 74 days before filing the

7   OAH I Due Process Complaint, unnecessarily delayed; thus Plaintiffs were entitled to an IEE at public

8   expense.  However, because Plaintiffs had waited 17 months to express disagreement with the District's

9   assessment, they were entitled to only half of the IEE cost: $2,400.  ALJ Marson found that the $800

10   cost of the IEE presentation by the evaluator was not part of the "public expense" owed to plaintiffs

11   under § 300.502.  Plaintiffs appealed the equitable reduction of the IEE award and failure to reimburse

12   the $800.  This Court found that the former question was rendered moot by the District's subsequent

13   payment of the remaining $2,400;  the Court agreed with plaintiffs on the latter question, finding that

14   "public expense" for an IEE includes the cost of an evaluator's presentation under § 300.502.  *See*

15   Summary Judgment Order at 16 (*citing* Schaffer v. West, 546 U.S. 49, 60 (2005)).

16    The claims Plaintiffs lost on were as follows: (1) whether the 2007 Assessment was appropriate

17   (OAH did not address; this Court ruled for District in the Summary Judgment Order); (2) whether the

18   District had the right to reassess C.M. (OAH ruled for District; this Court found moot in the Summary

19   Judgment Order); (3) whether plaintiffs were entitled to a temporary restraining order and preliminary

20   injunction enjoining commencement of an OAH hearing (this Court denied in Feb. 1, 2010 Order); (4)

21   whether plaintiffs could seek vindication of violations of the IDEA against all defendants under the Fifth

22   Amendment (this Court dismissed in June 2, 2010 Order); (5) whether Dr. Sassone, the District's

23   Director of Student Services, could be sued pursuant to Section 504 of the Rehabilitation Act owing to

24   her role in connection with the CDE's "failure to complete its investigation of Plaintiffs' compliance

25   complaint," FAC ¶ 6 (same); (6) Plaintiff's request for expert fees in connection with their claim for

26   attorneys' fees (District's motion to strike granted in June 2, 2010 Order); (7) whether the CDE and

27   Superintendent Jack O'Connell violated plaintiffs' rights under the IDEA, 42 U.S.C. § 1983, and the

28   Fifth Amendment for their role in staying the CDE compliance complaint and "fail[ure] to conduct

proper oversight of the OAH hearing process" (dismissed in June 2, 2010 Order); (8) whether the California Department of General Services ("DGS") and DGS Director Will Bush failed to exercise proper oversight over OAH under the IDEA and § 1983 (same) ; (9) whether the District violated C.M.'s IDEA procedural rights by offering to reassess C.M. (dismissed in Dec. 6, 2010 Order); (10) whether the District violated plaintiffs' constitutional rights to procedural due process by depriving C.M. a public education and failing to maintain procedures to prevent Dr. Sassone's attempt to compel reassessment of C.M. (same); (11) plaintiffs' second request for expert fees (stricken in Dec. 6, 2010 Order); (12) whether the DGS defendants failed to establish and maintain policies and procedures to ensure that OAH conducts hearings in conformity with established law and the IDEA, brought pursuant to the IDEA and Fourteenth Amendment (dismissed in Dec. 6, 2010 Order); (13) whether ALJ Marson erred by equitably reducing the plaintiffs' right to full reimbursement for the cost of the IEE (found moot in the Summary Judgment Order); (14) whether ALJ Marson erred in "introducing issues" into the OAH I hearing (found for District in Summary Judgment Order); (15) whether the District's student intern was qualified to conduct C.M.'s initial evaluation pursuant to Cal. Ed. Code § 56324 (same).[2]  On the basis of these claims, Plaintiffs sought reversal and vacation of the OAH decision, declaratory relief on a variety of issues, "general and compensatory" relief, as well as attorneys' fees.  *See* SAC ¶¶ 1-27

---

[2]This list, of course, does not include the issues raised by Plaintiffs in their two other cases, both of which Plaintiffs lost in their entirety.  In the consolidated OAH II/III Case, which was arguably  the more important case because it asked the fundamental question under the IDEA – whether C.M. was denied a FAPE – plaintiffs lost on the issues of (1) whether the District denied C.M. a FAPE from April 18, 2007 through March 18, 2008, (2) whether District denied C.M. a FAPE from March 18, 2008 through March 16, 2009, (3) whether the District denied C.M. a FAPE from March 16, 2009 through June 2009, (4) whether the District must make reimbursements or provide compensatory education to C.M., (5) whether ALJ Castillo in OAH II erred in dismissing C.M.'s claims as time barred, and the sub-issues of (6) whether the IEPs required consideration of C.M.'s Response-to-Intervention ("RTI") data, (7) whether the IDEA requires consideration of RTI data by the IEP team, (8) whether Plaintiffs meaningfully participated in the April 18, 2007 IEP Meeting, (9) whether C.M.'s April 18, 2007 IEP met the requirements of 20 U.S.C. § 1414(d), (10) whether the April 18, 2007 IEP was reasonably calculated to provide C.M. meaningful educational benefits, (11) whether the March 18, 2008 IEP meeting had the necessary attendees, (12) whether the 2008 IEP met § 1414(d) requirements, (13) whether "undocumented" IEP meetings were held, and (14) whether the District unlawfully retaliated by filing a Due Process complaint.  *See* Summ. Judg. Order at 18-48.

(Prayer for Relief).[3]

It is clear that Plaintiffs' degree of success was minimal.  At the OAH hearing, there were essentially three issues to be decided, and Plaintiffs partially won only one of them.[4]  Even that victory was cut in half due to plaintiffs' 17-month delay in requesting an IEE.  In the end, of the issues presented at OAH I, plaintiffs won $2,400.  The Court therefore finds that it is appropriate to reduce plaintiffs' fees at the OAH Hearing by 75%.  *See Capistrano*, 2011 WL 1326905 at *2 (reducing fees by 66.7% where plaintiffs prevailed on two out of twenty-two issues, resulting in $79,000 in compensation).

Plaintiffs' degree of success at the District Court level was even slighter.  As noted, Plaintiffs brought a litany of claims beyond the direct appeal of the issues decided by ALJ Marson, and lost on every one of them.  Regarding the issues decided by ALJ Marson, but for one, the Court found in favor of the District or found the appeal was rendered moot by the District's subsequent payment for the reassessment of C.M.  The only issue plaintiffs won in this Court was the $800 reimbursement for the presentation of the IEE.  That issue was a minor point raised by Plaintiffs, consuming only 13 lines in their 25-page motion for summary judgment.  Under these circumstances, considering the enormity of the claims lost by plaintiffs, the Court finds a 95% reduction of fees incurred in the District Court case is warranted.  *See S.A. v. Tulare County Office of Educ.*, 2009 WL 4048656, *7 (E.D. Cal. Nov. 20,

---

[3]In the November 18, 2010 Joint Case Management Statement, plaintiffs stated that "[t]he amount of damages plaintiffs seek is $550,000.  The amount is based upon calculation of compensatory education under the IDEA, lost income, costs to remedy injuries to C.M. and his parents caused by due process violations and retaliation."

[4]Plaintiffs argue that this Court should apply the test set forth by the Ninth Circuit in *Thomas v. City of Tacoma*, 410. F.3d. 644, 649 (9th Cir. 2005).  *Thomas*, which pre-dated *Aguirre* by one year, required the District Court to determine whether the unsuccessful claims were "related" to the successful claims by "involv[ing] a common core of facts or are based on related legal theories."  *Id.*  The *Aguirre* panel does not mention *Thomas* in the majority opinion; however, Judge Pregerson's concurrence advocates for its survival.  *Aguirre*, 461 F.3d at 1122.  It remains unclear whether the *Thomas* analysis survived *Aguirre* - the courts of this Circuit appear to have applied on the *Aguirre* "degree of success" test without analysis of whether the unsuccessful claims related to the prevailing ones.  *See J.M.*, 2011 WL 1326905 at *4-5; *S.A.*, 2009 WL 4048656 at *6-7.  In any event, the Court finds that the unsuccessful claims were unrelated to the IEE reimbursement claim.  The latter simply asked whether the District's 74-day delay in filing for due process violated 34 C.F.R. § 300.502's proscription that filing be done "without unnecessary delay."  The unsuccessful claims raised a litany of complex legal and factual theories, ranging from whether the very act of filing for due process can constitute retaliation under § 504 of the Rehabilitation Act to whether the 2007 Assessment was appropriate.  Plaintiffs cannot recover for these claims under *Thomas* either.

16

United States District Court
For the Northern District of California

2009) (reducing fees by 90% where plaintiffs achieved partial success on an issue that was unrelated to the substantial issues litigated).

Plaintiffs also argue that they should be awarded attorneys' fees for two issues that this Court found moot. The first was whether the ALJ erred by reducing Plaintiffs' reimbursement for the IEE by half due to the plaintiffs' 17-month delay. The Court found that issue was rendered moot by the District's subsequent payment of the remaining half ($2,400). *See* Summ. Judg. Order at 12. The second was whether the ALJ erred by allowing the District to reassess C.M. The Court found that issue was rendered moot by the District's reassessment, which was completed on August 18, 2010. *Id.*

The Court disagrees that plaintiffs are owed attorneys' fees on these issues, and instead finds that plaintiffs' award must be further reduced due to their continued litigation of the moot claims. The IDEA requires the Court to reduce attorneys' fee awards where the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy. *See* 20 U.S.C. § 1415(i)(3)(F). ALJ Marson determined on July 1, 2009 that the District could proceed with the assessment proposed in its September 24, 2008 assessment plan. The reassessment of C.M. instead occurred pursuant to his triennial evaluation under an assessment plan agreed to by the plaintiffs on March 29, 2010. *See* Pls.' Opp. to Defs.' Mot. to Supp. the Admin. Record., dkt. 103, at 3 (Oct. 7, 2011). The assessment was completed on August 18, 2010. The issue was then moot - whether the District could reassess C.M. pursuant to an earlier assessment plan made no difference. Even the District stated that it "no longer cares about [ALJ Marson's Order allowing reassessment] because the assessment it needed has already occurred." Defs.' Reply to Supp. the Admin Record, dkt. 103, at 4 (Oct. 14, 2011). Nonetheless, Plaintiffs continued to pursue their claim that "the [District] was not entitled to reevaluate C.M. based on the administrator's assessment plan" through summary judgment, where judgment was entered on March 8, 2012 – a full 19 months after the issue was rendered moot by the agreed-to reassessment. *See* Pls.' Partial Mot. for Summ. Judg., dkt. 106, at 15 (Nov. 10, 2011). With respect to the $2,400 remaining cost of the IEE, the District paid the amount requested by Plaintiffs on September 2, 2011. On both issues, plaintiffs protracted the litigation by not only pursuing their claims through summary judgment, but filing an opposition to the District's motion to supplement

the record with the fact that the payments and reevaluation had even occurred.  *Id.*[5]

This is the type of unreasonable protraction of resolution for which § 1415(I)(3)(F) requires that the Court reduce attorneys' fees.  Due to the magnitude of the litigation pursued by Plaintiffs on the moot claims, and the extensive period of time that Plaintiffs pursued them, a further reduction of 75% of their fees is warranted.

The Court will now turn to calculation of the fees.

### 3.    Fee Calculations

#### a.    Plaintiffs' Fees and Costs

The Court will begin with plaintiffs' fee calculation, using the lodestar figure.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 424;  *see also, Aguirre*, 461 F.3d at 1118 (recognizing that *Hensley* applies to IDEA attorneys' fees statute). "This figure, commonly referred to as the 'lodestar,' is presumed to be the reasonable fee."  *Id.*  To support the lodestar calculation, the prevailing plaintiff must submit documentary evidence detailing the number of hours spent and how it determined the hourly rate requested.  *Id.*  After the Court calculates the lodestar, and "in rare and exceptional cases," the Court may adjust the lodestar "based on factors not subsumed in the initial calculation of the lodestar."  *Van Geren v. Guarantee Mutual Life Ins.*, 214 F.3d 1041, 1045 (9th Cir. 2000);  *but see* 20 U.S.C. § 1415(i)(3)(c) (lodestar fee may not be increased for claims under the IDEA).

---

[5]In its Summary Judgment Order, the Court noted that plaintiffs were continuing to litigate these claims due to their "presumably forthcoming requests for attorneys' fees and other costs of litigation." *Id.* at 13.  As the Court stated however, "the Ninth Circuit has explicitly held that 'the existence of an attorneys' fees claim does not resuscitate an otherwise moot controversy.'"  *Id., citing Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996).  Continuing to litigate moot claims in order to win attorneys' fees, and thereby *create* greater fees, flies in the face of the purpose of the IDEA.  *See Aguirre*, 461 F.3d at 1120 ("All children suffer when the schools' coffers are diminished on account of expensive, needless litigation.").
The Court is sympathetic to the argument that where a school district engages in gamesmanship by rendering an issue moot after a long period of litigation, attorneys' fees may be warranted for a plaintiff who then voluntarily dismisses her claim and seeks fees incurred up to that point.  At the very least, a different analysis would be employed.  That is not the situation faced here, however; here, plaintiffs continued to litigate long after the issues were rendered moot, at immense expense to both parties.

18

Beginning with the hourly fee, attorneys' fees are to be calculated "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). The relevant community is the forum in which the district court sits. *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991). Here, that would be San Francisco, California. "The established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

Ms. Foltz, who has participated in administrative proceedings before the OAH since 1997, attaches a declaration stating that her hourly rate is $300 per hour for attorney legal services in federal District Court cases, and a sliding scale of $250 - $300 per hour for administrative hearings. *See* Foltz Decl., ¶ 7. She states that this is below the customary hourly charges by persons of comparable experience for comparable legal services in the community. In support, she attaches three declarations by other practitioners in the field. *See* Zapota Decl., Savage Decl., Leigh Decl. Michael Zapota, who worked as an administrative hearing officer and has represented clients in special education matters since 1982, charges $340 per hour to his clients. *See* Zapota Decl. ¶ 8. Roberta Savage, who operates a sole practice specializing in representing students with disabilities in special education litigation, charges $350 per hour. Based on the evidence provided by plaintiff, the Court finds that $300 per hour is a reasonable charge in the District Court case, considering Ms. Foltz's experience.

Plaintiffs are seeking to recover $300 per hour in both the administrative and District Court cases. The District argues that Plaintiffs should not be able to seek the same rate in both proceedings. The Court agrees. The evidence shows attorneys charge less for administrative work than federal litigation. *See* Foltz Decl. ¶ 7; *see also* Leigh Decl. ¶ 6 (charging $400/hour in federal litigation, and $375/hour in administrative hearings). Ms. Foltz typically charges less for work in administrative proceedings. Foltz Decl. ¶ 7. Indeed, Ms. Foltz's billing records show that she charged her clients $225 per hour for her work in the administrative hearing in this case. Foltz Decl., Exs. 1-2. Plaintiffs argue that the attorneys' fees should not be calculated at the $225 rate, but at "current prevailing rates," pursuant to the Supreme Court's holding in *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989) allowing for adjustment due to delays inherent to the litigation process. The Court disagrees, as the bulk of the delay

United States District Court
For the Northern District of California

1   in litigation of this case was due to the Plaintiffs' largely unsuccessful appeal.  The Court finds that $225

2   per hour is a reasonable amount for the administrative work.

3       Plaintiffs seek to recover $100 per hour for paralegal work, which includes paralegal "type"

4   work done by Ms. Foltz.  The District argues that $90 is more appropriate.  The Court finds that $100

5   per hour is reasonable for paralegal work.

6       Ms. Foltz attaches records reflecting time expenditures on the administrative case, from January

7   23, 2009 through July 31, 2009.  Foltz Decl., Ex. 1.  The total number of hours is 182.4.[6]  The District

8   objects to some of these hours, but saves most of its objections for the District Court case.  Having

9   reviewed the objections, the Court finds the hours listed were reasonable and appropriate.  Multiplying

10  182.4 by the $225 rate totals $41,040.  Paralegal hours totaled 4.7, adding another $470.  The lodestar

11  for work at the administrative hearing is therefore $41,510.

12      The District Court work, from July 17, 2009 through March 22, 2012, totals 667.7 hours, and

13  38.5 hours for paralegal work.  Foltz Decl. ¶ 24.  As noted, the District objects to a number of these

14  hours.  Some of the objections focus on claims that Plaintiffs did not prevail on; Plaintiffs' degree of

15  success, however, is considered in a different analysis, *supra*.  The District also objects to "common

16  work" between this case and the consolidated OAH II/III Appeal; Plaintiffs appear to have factored that

17  in by splitting certain billed hours between the cases.  *See* Foltz Decl., Exs. 3-5.  The District also

18  objects to certain entries as vague or focused on overhead.  Having considered the District's objections,

19  the Court finds that 667.7 hours is a reasonable number and that the entries are appropriate.  The total

20  for attorneys' fees for the federal litigation is $300 times 667.7, or $200,310; paralegal fees totaled

21  $3,850.  The lodestar for the District Court case is therefore $204,160.  Plaintiffs request an additional

22  $1,927.12 in costs, totaling $206,087.12.

23      For the administrative hearing lodestar of $41,510, applying the "degree of success" reduction

24  of 75% leaves $10,337.50.  Further applying the "unreasonable protraction" reduction of 75% leaves

25  $2,594.38.

26      For the federal litigation lodestar of $206,087.12, applying the "degree of success" reduction of

27  _____

28      [6]Plaintiffs state that the hours expended total 183.4.  However, adding the totals provided in the Foltz Declaration equals 182.4.

95% leaves $10,304.36.  Further applying the "unreasonable protraction" reduction of 75% leaves $2,576.09.

The total attorneys' fees owed plaintiffs, therefore, is **$5,170.47.**

b.      **District's Fees and Costs**

The District seeks a total of $75,569.50 based on work done by two law firms employed by the District in defending the retaliation and procedural IDEA claims.  Calculations for the District's fees are more nebulous.  To be sure, the District has provided numerous declarations with detailed billing records attached.  *See* Leone Decl., Albert Decl., Ross Decl. (with respect to fees incurred by Stubby & Leone);  Levine Decl., Moore Decl., Garcia Decl., Little Decl., Ettinger Decl., Tsong, Decl., and Proter Decl., (with respect to fees incurred by Dannis Woliver Kelley).  The calculation is difficult because, as determined earlier in this Order, the District is only owed fees for its partial defense of one set of claims, the alleged procedural IDEA violations.

As an initial matter, the Court finds that the attorneys' fee rates requested are reasonable. Plaintiffs do not object to the $165-$255 rates variously charged by the Districts' attorneys.

The District retained Stubby & Leone only in relation to Plaintiffs' Rehabilitation Act claims. The Court found *supra* that Plaintiffs were not liable for fees on those claims.  Therefore, the $14,264.00 incurred by that firm are inapplicable.

What is applicable are the fees incurred by Dannis Woliver Kelley surrounding the consolidation and dismissal of the procedural IDEA claims.  The Levine Declaration provides a detailed description of hours expended toward the consolidation and dismissal effort generally.  *See* Levine Decl., Ex. B, at 3-10.  The Court believes the fees listed as incurred on December 7, 2010 ($705.00), January 11 ($980.00), January 17 ($258.50), February 8 ($1,920.00), February 11 ($480.00), February 17 ($312.00), February 24 ($1,200.50), and February 25, 2011 ($1,568.00) are largely owed to the District as related to the duplicative claims.  This totals $7,424.00.

In resolving the precise amount owed to the District, the Court takes its cue from the Supreme Court's recognition that "the essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).  The Court believes the

correct outcome in this case is that the District's fees in defending plaintiffs' protracted and frivolous procedural IDEA claims offset the fees owed plaintiffs for plaintiffs' minor victory.  The Court notes Judge Kozinksi's admonition in *Clyde K. v. Puyallup School Dist., No. 3*, 35 F.3d 1396, n. 10 (9th Cir. 1994):

> Ryan has now spent two years in a self-contained program originally intended to serve as a short-term interim placement. The parties' unfortunate inability to reach agreement has resulted in legal expenses of over $100,000 for the school district alone – money that might have been better spent improving educational opportunities for Ryan and other disabled students. This is surely a case where the lawyers would have better served their clients – and the interests of society – had they concentrated their efforts on being healers and mediators rather than warriors. *See, e.g.,* Warren E. Burger, *The Role of the Lawyer Today,* 59 Notre Dame L.Rev. 1, 2 (1983) ("In their highest role, lawyers should be the healers of conflicts and, as such, should help the diverse parts of a complex, pluralistic social order function with a minimum of friction.").

*Id.* at n.10.  That reprimand applies here, where hundreds of thousands – or, if one includes the OAH II Interim Appeal and OAH II/III Appeal, perhaps millions – of dollars have been spent litigating a case that should have been resolved years ago by settlement.  *See also Aguirre*, 461 F.3d at 1120 ("All children suffer when the schools' coffers are diminished on account of expensive, needless litigation."). Surely C.M. would have been better off had the parties worked together toward resolution, as mandated by the IDEA, rather than file three administrative due process complaints, take three District Court appeals, and level a slew of regulatory, statutory and Constitutional attacks against each other.[7]  It is appropriate that the outcome of the calculations in this case leads to offsetting fee awards, and that no party is rewarded for this litigation run amok.

The fees and costs owed to the District, therefore, also total **$5,170.47.**

---

[7]The Ninth Circuit recognized as much in its affirmance of this Court's Order in the 2009 OAH Interim Appeal, noting that:

> MM's tactics have resulted in three separate district court cases and now three separate appeals from those cases.  The result has been a procedural morass which caused significant delay in resolving CM's educational needs, without providing any benefit to CM.

*M.M. v. Lafayette*, No. 10-16903, 6361 (9th Cir. Jun. 6, 2012).

**CONCLUSION**

The parties' motions are GRANTED IN PART and DENIED IN PART.  The fees and costs sought by the parties offset, and therefore, neither owes fees or costs to the other.

**IT IS SO ORDERED.**

Dated: August 8, 2012

_____
SUSAN ILLSTON
United States District Judge

23