UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M., et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>LAFAYETTE SCHOOL DISTRICT, et al.,<br><br>  Defendants. | Case No. 10-cv-04223-SI<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY ADJUDICATION OF PLAINTIFFS' CLAIMS FOR REIMBURSEMENT UNDER THE IDEA**<br><br>Re: Dkt. Nos. 136, 137 |

Before the Court are two motions: defendants' motion for summary adjudication of plaintiffs' claims for reimbursement under the Individuals with Disabilities Education Act ("IDEA"); and plaintiffs' motion for reimbursement of educational expenses pursuant to the IDEA. Docket Nos. 136, 137. For the reasons set forth below, the Court hereby GRANTS plaintiffs' motion and DENIES defendants' motion.

## BACKGROUND

This action, brought under the IDEA and Section 504 of the Rehabilitation Act, concerns a dispute over the educational opportunities provided to C.M., a child who has been identified as an individual with learning disabilities. The facts and procedural history of this case are complex. A detailed summary and timeline are set forth in the Court's February 7, 2012 order regarding the parties' cross-motions for summary judgment, Docket No. 78, as well as in the Ninth Circuit Court of Appeals Opinion, *M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842 (9th Cir. 2014). For brevity, the Court now recites only the background relevant to the motions at hand.

This case involves three related actions, two of which are now closed.[1] Plaintiffs filed

---

[1] The closed cases are Case Nos. 09-3668 and 09-4624.

United States District Court
Northern District of California

their Second Amended Complaint in this case on March 21, 2011.  Docket No. 29.  On February 7, 2012, the Court ruled on the parties' cross-motions for summary judgment.  Docket No. 78. The Court granted defendants' motion for summary judgment and denied the majority of plaintiffs' motion.  *Id.* at 48.

Plaintiffs appealed to the Ninth Circuit, which affirmed in part, reversed in part, and remanded the case.  The appeals court found that defendant Lafayette School District (the "District") "procedurally violated the IDEA by not providing the parents with [C.M.'s] complete RTI [Response-to-Intervention] data."  *M.M.*, 767 F.3d at 855-56.  Under the facts of this case, that procedural violation denied C.M. a free appropriate public education ("FAPE").  *Id.* at 856. Having found that the District denied C.M. a FAPE, the Ninth Circuit explained that it "need not address the question of whether the resulting IEPs [individualized educational programs] were reasonably calculated to enable C.M. to receive educational benefits."  *Id.* (citing *Amanda J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 895 (9th Cir. 2001)).

The appeals court further stated:

> School districts may be ordered to reimburse the parents of a child who has been denied a FAPE for the cost of private instruction.  20 U.S.C. § 1412(a)(10)(C)(ii); *see also* 34 C.F.R. § 300.148(c).  During the OAH hearing and at the district court, the parents sought reimbursement for C.M.'s audiology and processing assessments, sound-based therapy, and private reading programs that they provided for C.M. at their own expense.  Both the ALJ and the district court determined that the parents were not entitled to reimbursement because they had concluded that the District had not denied C.M. a FAPE.  Because we conclude otherwise, we remand to the district court for reconsideration of this issue.

*Id.*  Mandate returning the case to this Court was issued on December 12, 2014.  Docket No. 105.

On August 27, 2015, following briefing on the remaining areas of dispute upon remand, the Court issued an order regarding case management.  Docket No. 116.  In that order, the Court stated that it would consider plaintiffs' claim for reimbursement under the IDEA, limited to the categories of expenses that the Ninth Circuit listed in its opinion, which are the same expenses that plaintiffs previously sought at the administrative hearing and before this Court.  *Id.* at 8.  These categories are: "C.M.'s audiology and processing assessments, assessment by Lindamood-Bell

United States District Court
Northern District of California

Learning Processes, Tomatis therapy, and Lindamood-Bell reading interventions . . . as well as compensatory education services in an intensive remedial reading program through Lindamood-Bell." *Id.* at 8-9 (citing *M.M. v. Lafayette Sch. Dist.*, Nos. 09-4624, 10-4223, 2012 WL 398773, at *32 (N.D. Cal. Feb. 7, 2012)).  The Court granted leave to plaintiffs to file a motion to supplement the administrative record by September 18, 2015, later extended to October 9, 2015, to add any evidence regarding these categories of reimbursement. *Id.* at 9; Docket No. 119.

Plaintiffs did not file a motion to supplement the administrative record.  On October 13, 2015, plaintiffs filed a motion to file a supplement to the Second Amended Complaint.  *See* Docket No. 123.  On November 18, 2015, the Court denied plaintiffs' motion.  Docket No. 132. The Court also denied defendants' motion for judgment on the pleadings. *Id.*

On April 1, 2016, defendants filed a motion for summary adjudication of plaintiffs' claims for reimbursement under the IDEA.  Docket No. 136.  On April 29, 2016, plaintiffs filed a motion for reimbursement of educational expenses pursuant to the IDEA, also framed as an opposition to defendants' motion.  Docket Nos. 137, 139.  Defendants filed an opposition to plaintiffs' motion, also framed as a reply in support of defendants' motion.  Docket Nos. 140, 141.  Plaintiffs then filed a reply in support of their motion.  Docket No. 145.  The parties also sought a stay of proceedings on plaintiffs' Section 504 retaliation claim while the parties pursue settlement. Docket Nos. 142, 143.  The parties requested that the Court rule on the present cross-motions regarding plaintiffs' entitlement to reimbursement prior to the settlement conference set for September 27, 2016. *See id.*

On June 13, 2016, the Court ordered plaintiffs to file proof of the expenditures for which they are seeking reimbursement and gave defendants leave to oppose plaintiffs' filing.  Docket No. 146.  Plaintiffs filed proof of their expenses on June 24, 2016, and defendants filed an opposition on July 5, 2016.  Docket Nos. 148, 149.

## LEGAL STANDARD

The IDEA provides that the district court may "grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).  More specifically, "[s]chool districts may be ordered

United States District Court
Northern District of California

to reimburse the parents of a child who has been denied a FAPE for the cost of private instruction." *M.M.*, 767 F.3d at 856 (citing 20 U.S.C. § 1412(a)(10)(C)(ii); 34 C.F.R. § 300.148(c)). Where parents enroll their child in private services "without the consent of or referral by the public agency, a court . . . may require the agency to reimburse the parents for the cost of that enrollment if the court . . . finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." *See* 20 U.S.C. § 1412(a)(10)(C)(ii).

The Ninth Circuit has held that "[p]arents have an equitable right to reimbursement for the cost of providing an appropriate education when a school district has failed to offer a child a FAPE." *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1058 (9th Cir. 2012) (citing *W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23, Missoula, Mont.*, 960 F.2d 1479, 1485 (9th Cir. 1992), *superseded on other grounds by* 20 U.S.C. § 1414(d)(1)(B)). "[R]eimbursement for such expenses is appropriate *only* if (1) the school district's placement violated the IDEA, and (2) the alternative placement was proper under the statute." *Id.* at 1059 (citing *Florence Cty. Sch. Dist. Four v. Carter,* 510 U.S. 7, 15 (1993)). "If both criteria are satisfied, the district court then must exercise its 'broad discretion' and weigh 'equitable considerations' to determine whether and how much, reimbursement is appropriate." *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.,* 635 F.3d 1155, 1159 (9th Cir. 2011) (quoting *Carter,* 510 U.S. at 15–16). Equitable factors that the district court may consider include: "notice to the school district before initiating the alternative placement; the existence of other, more suitable placements; the parents' efforts in securing the alternative placement; and the level of cooperation by the school district." *Anchorage*, 689 F.3d at 1059 (citing *Forest Grove Sch. Dist. v. T.A.,* 523 F.3d 1078, 1088–89 (9th Cir. 2008)). In making its determination, the district court must review "[t]he conduct of *both* parties . . . ." *Id.* (quoting *W.G.,* 960 F.2d at 1486).

## DISCUSSION

Here, the Court finds that the denial of FAPE, as determined by the Ninth Circuit, warrants reimbursing plaintiffs for the costs of certain private services they obtained for C.M. In this case,

the first criterion for reimbursement under the IDEA has been established, as the Ninth Circuit has already held that the District denied C.M. a FAPE by withholding his complete RTI data from his parents. *See M.M.*, 767 F.3d at 856; *Anchorage*, 689 F.3d at 1059 (". . . M.P.'s parents satisfied the first criterion because the [school district] denied M.P. a FAPE . . . ."). The Court must therefore now determine whether the alternative services that C.M.'s parents provided were proper under the statute. *See Anchorage*, 689 F.3d at 1059. If so, reimbursement is appropriate.

Plaintiffs move for "an order granting them $15,997.00, as reimbursement for appropriate Special Education and Related Services that the parents of C.M. privately funded, during the time Defendants denied C.M. a FAPE from March 18, 2007 of his first-grade year through his third-grade year in June 2009."[2] Docket No. 137, Notice of Mot. The reimbursement request falls under three broad categories: an audiology evaluation by Dr. Dimitra Loomos; Tomatis services, including therapy, evaluations, parent conference, and transportation; and Lindamood-Bell services, for therapy, evaluation, and transportation. Defendants, by their motion, seek an order upholding ALJ Geren's denial of reimbursement. Docket No. 136, Defs.' Mot. at 1. Defendants do not dispute that plaintiffs incurred the costs now sought, but they argue that the Court should reduce or disallow the costs for various reasons, including a balancing of the equities.

## I.    Reimbursement for Dr. Loomos

In November 2007, C.M.'s "parents obtained a private evaluation from Doctor of Audiology, Dimitra Loomos." Docket No. 137, Pls.' Mot. at 5 (quoting *M.M.*, 767. F.3d. at 848). Dr. Loomos diagnosed C.M. with a central auditory processing disorder. *Id.* at 5-6. Plaintiffs now seek reimbursement of $545.00 for the evaluation. *Id.* at 6. Defendants argue that reimbursement should be denied because, they say, C.M.'s parents "failed to provide the full IEP team with a copy" of Dr. Loomos's December 2007 assessment until September 2008. Defs.' Mot. at 14.

---

[2] It is unclear why the reimbursement start date should be March 18, 2007, when the IEP meeting at which the initial assessment results were presented, and where the RTI data was originally withheld, occurred on April 18, 2007. *See M.M.*, 767 F.3d at 848. Nevertheless, this distinction is irrelevant, as plaintiffs have not requested reimbursement for any costs incurred prior to April 18, 2007.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    They also argue that C.M.'s parents did not provide notice regarding their intent to obtain this

2    outside assessment.  *Id.*

3        The Court disagrees that these are grounds for denying reimbursement of Dr. Loomos's

4    assessment in this case.  First, although defendants are correct that in some circumstances failure

5    to provide notice to the district may constitute grounds for denying reimbursement, *see* 20 U.S.C.

6    § 1412(a)(10)(C)(iii), it is not clear that any improper withholding occurred here.  The Ninth

7    Circuit has noted, "C.M.'s second grade teacher, Jody Carson, was aware of Dr. Loomos's

8    evaluation because she completed a report for Dr. Loomos, and E.M. gave a copy of the final

9    evaluation report to Ms. Carson, [Instructional Support Teacher] Jones, and the school front desk

10   when school resumed after the holiday break."  *M.M.*, 767 F.3d at 849.  Second, the Court finds

11   that this single outside assessment, provided at a reasonable cost, was justified given the District's

12   withholding of RTI data earlier that year.  The Court will not penalize C.M.'s parents for failure to

13   provide notice in this limited circumstance.   Dr. Loomos's evaluation, which diagnosed

14   unidentified needs in C.M.'s auditory processing roughly seven months after the District began

15   withholding RTI data, is an appropriate reimbursement.  *See* Pls.' Mot. at 17-18.

16

17   **II.    Reimbursement for Tomatis Therapy**

18        Plaintiffs also seek reimbursement for "auditory processing therapy" that C.M. received

19   under the supervision of Dr. Deborah Swain,[3] using the Tomatis Method.  Pls.' Mot. at 8.

20   Plaintiffs have provided receipts showing $6,573.00 in payments to The Listening Center, Inc.,

21   between February 27, 2008, and February 10, 2009, for evaluations and therapy provided by Dr.

22   Swain.  Docket No. 147, Decl. of Lina Foltz ("Foltz Decl.") ¶ 6, Ex. 3.  Defendants challenge

23   Tomatis therapy as an inappropriate service and argue that C.M. derived "little to no benefit" from

24   it.  Defs.' Mot. at 7-9.  They also argue that reimbursement should not be allowed because the

25   parents did not provide notice to the District prior to beginning Tomatis therapy, because the

26   parents did not use the IDEA's independent educational evaluation ("IEE") process, and because

27

28       _____

         [3] Dr. Swain is sometimes referred to in the record as "Dr. Ross-Swain."

1    the parents refused or delayed consent to District assessments at various points in 2008. *Id.* at 10-

2    12.

3        Defendants' attack on Tomatis therapy amounts to an attack on the second prong of the

4    Ninth Circuit's test, that reimbursement under the IDEA may not occur if the private service was

5    not "proper under the statute." *See Anchorage*, 689 F.3d at 1059. The Ninth Circuit has explained

6    "proper" in this context as follows:

> To qualify for reimbursement under the IDEA, parents need not show that a private
> placement furnishes every special service necessary to maximize their child's
> potential. They need only demonstrate that the placement provides educational
> instruction specially designed to meet the unique needs of a handicapped child,
> supported by such services as are necessary to permit the child to benefit from
> instruction.

10   *C.B.*, 635 F.3d at 1159 (quoting *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 365 (2d Cir. 2006)).

11   Thus, to the extent that defendants challenge Tomatis therapy because it "is not intended to replace

12   traditional speech and language therapy or occupational therapy," this does not constitute a reason

13   to deny reimbursement. *See* Defs.' Mot. at 8 (quoting ARII 504).

14       Further, the record reflects that C.M. did make improvements during his time receiving

15   Tomatis therapy. For instance, as summarized by the Ninth Circuit, "[a]s of February [2008],"

16   when C.M.'s parents first sought Dr. Swain's services, "C.M.'s RTI SORT scores were

17   declining." *See M.M.*, 767 F.3d at 849. C.M. received Tomatis therapy throughout the spring and

18   into the summer of 2008. Foltz Decl. Ex. 2. By the time C.M. started third grade the next fall, his

19   SORT scores had improved from 1.2 to 1.9. Docket No. 65-6, Pls.' Opp'n to Defs.' Mot. for

20   Partial Summ. Judg., Ex. A at 29. Although defendants may be correct in questioning whether the

21   improvement was entirely attributable to Tomatis therapy, there is at least sufficient dispute in the

22   record that the Court will not use this as a reason to disallow reimbursement.

23       The Court also declines to exercise its equitable powers to reduce plaintiffs'

24   reimbursement request on the basis of other reasons that defendants cite. Regarding notice, at the

25   time that the parents obtained an initial assessment from Dr. Swain, the District had been

26   withholding C.M.'s RTI data from the parents for nearly one year. Given this, the Court finds that

27   the equities point in favor of awarding reimbursement as the parents tried to resolve how to meet

28

United States District Court
Northern District of California

their child's educational needs, given that he was being denied a FAPE.  Moreover, the District was effectively on notice of the Tomatis services for the majority of the timeframe in which the services were incurred.  *See M.M.*, 767 F.3d at 849 (". . . throughout the spring, . . . conversations between E.M. and C.M.'s teachers were ongoing concerning . . . the recommendations contained in both [Dr. Loomos' and Dr. Swain's] evaluation reports.").  Nor is the Court persuaded that the parents should have pursued the IEE process as a prerequisite to reimbursement; when they did request an IEE in September 2008, "[f]or two months, the District did not respond to the IEE request . . . ."  *See id.*, 767 F.3d at 849-50.  Finally, the Court will not deny reimbursement based on any withheld consent to the District's proposed assessments, as the District did not propose these assessments until May and September 2008, well after Dr. Swain conducted her initial evaluation.  *See* Defs.' Mot. at 11-12.  Although Dr. Swain later reevaluated C.M. in January 2009, the reevaluation cost of $150.00 is a reasonable one.  *See* Foltz Decl. Ex. 3.  The Court therefore finds it appropriate under the present circumstances to order reimbursement to plaintiffs for the $6,537.00 paid for Tomatis services.

### III.     Reimbursement for Lindamood-Bell

Plaintiffs' receipts show $7,652.90 in payments to Lindamood-Bell Learning Processes for a diagnostic evaluation and treatment.[4]  Foltz Decl. Ex. 1, 2.  Plaintiffs have requested reimbursement for an October 20, 2008, evaluation and for services provided from March through May 2009.  *Id.*; Pls.' Mot. at 11-12, 23.  Defendants argue that reimbursement should be denied because, they say: the District offered "instruction using the Lindamood-Bell methodology by trained staff"; the services were not necessary to provide C.M. with a FAPE; and the District offered to reassess C.M.  Defs.' Mot at 15-19.  They cite to ALJ Geren's and this Court's prior findings and argue that any violation on the District's part was procedural only and not substantive.

At the outset, the Court notes that the parties devote a considerable amount of space in

---

[4] In their motion, plaintiffs round this figure up to $7,653.00.  *See* Pls.' Mot. at 12.

United States District Court
Northern District of California

their briefs to disputing whether there was also a substantive denial of FAPE, in addition to the procedural one that the Ninth Circuit found.  It is unclear why they do this, as such a finding is unnecessary to reimbursement, which is the sole question currently before the Court.  *See M.M.*, 767 F.3d at 856.  The Ninth Circuit made clear that the procedural FAPE violation that it found in this case could support a claim for reimbursement, and the Court will not entertain the parties' arguments as to whether the IEPs that the District offered were substantively appropriate under the IDEA.

Defendants' arguments that this Court should uphold ALJ Geren's finding denying reimbursement is likewise misplaced.  Defendants argue that ALJ Geren's decision should stand because "the Ninth Circuit left intact this Court's overall determination that ALJ Geren's decision was entitled to substantial deference."  Defs.' Mot. at 5.  In this circuit, "[u]nder the IDEA, federal courts accord considerably less deference to state administrative proceedings than they do in most instances of judicial review of . . . agency actions . . . ."  *Anchorage*, 689 F.3d at 1053 (internal quotation marks and citation omitted).  "Administrative proceedings are accorded 'due weight' and the reviewing court must, at least, consider the findings carefully."  *Id.* (internal quotation marks and citation omitted).  Here, the Ninth Circuit overturned ALJ Geren's and this Court's decision finding that there was no FAPE violation, and remanded for reconsideration of plaintiffs' reimbursement request in light of this finding.  *M.M.*, 767 F.3d at 856.  Even giving the administrative decision due weight, the Court finds reason to depart from that decision, given the direction from the Ninth Circuit on remand.

The Court will order reimbursement for the Lindamood-Bell services that plaintiffs obtained during the time period in question.  The District does not argue that the Lindamood-Bell services fail to meet the two-prong test used in the Ninth Circuit.  It is clear that the District violated the IDEA, and that Lindamood-Bell services were "proper under the statute."  *See id.* at 1059.  Therefore, the District's arguments amount to urging that the Court find the equities to weigh against reimbursement.  *See C.B.*, 635 F.3d at 1159 ("If both criteria are satisfied, the district court then must exercise its 'broad discretion' and weigh 'equitable considerations' to determine whether and how much, reimbursement is appropriate.").

United States District Court
Northern District of California

The Court declines to find that the equities weigh against plaintiffs' reimbursement in this case. The District argues that it offered similar or superior services using the Lindamood-Bell technique at the March 16, 2009, IEP meeting. Defs.' Mot. at 16. However, by this point it had been nearly two years since the District began withholding C.M.'s RTI data. As stated above, this act, which constituted a FAPE violation, entitles C.M. to reimbursement for the cost of obtaining private services, where a FAPE was not made timely available. *See* 20 U.S.C. § 1412(a)(10)(C)(ii). Plaintiffs seek reimbursement for a limited period of time—for one assessment and roughly two months' worth of services. *See* Foltz. Decl. Ex. 1. Even if the parents refused District assessment, such refusal does not always mean the parent may not obtain reimbursement for privately funded services. *See* 20 U.S.C. § 1412(a)(10)(C)(iii) ("The cost of reimbursement . . . *may* be reduced or denied" if the District used the IDEA's notice requirements to notify the parents "of its intent to evaluate the child . . ., but the parents did not make the child available for such evaluation . . . .") (emphasis added); *see also S.L. ex rel. Loof v. Upland Unified Sch. Dist.*, 747 F.3d 1155, 1158, 1160 (9th Cir. 2014) (awarding reimbursement where the mother did not consent to District's proposed assessment but requested a meeting to discuss the proposal). Finally, defendants' argument that Lindamood-Bell services were not needed to provide C.M. with a FAPE is not credible where defendants simultaneously point out that they offered Lindamood-Bell services in C.M.'s proposed IEP. *See* Defs.' Mot. at 17. The Court will order reimbursement for the $7,652.90 that C.M.'s parents paid for privately funded Lindamood-Bell services.

## IV.     Transportation

Finally, plaintiffs seek reimbursement for the cost of driving C.M. to and from Lindamood-Bell and Tomatis therapy. Specifically, they seek $325.90 for providing one round-trip, at five miles each way, for Tomatis therapy sessions and for Dr. Swain's evaluations (forty-five sessions and one evaluation in the first half of 2008, and fifteen sessions and one evaluation in 2009). Pls.' Mot. at 9 n. 10; Docket No. 148, Decl. of M.M. ¶¶ 1-2. They also seek reimbursement for two round-trips for each Lindamood-Bell therapy session and one round-trip for each evaluation and instructional session, at 8.1 miles each way. Pls.' Mot. at 12 n.12; M.M.

10

1   Decl. ¶¶ 3-4.  In each instance, they seek reimbursement at the IRS mileage rate and ask that the

2   Court take judicial notice of those rates.  Docket No. 138, Pls.' Req. for Judicial Notice.

3        The Court will order reimbursement for these transportation expenses, with modifications

4   based on the Court's calculations as explained below.  Transportation may be a "related service"

5   under the IDEA, where "required to assist a child with a disability to benefit from special

6   education . . . ."  20 U.S.C. § 1401(26)(A).  The Ninth Circuit has awarded reimbursement for

7   transportation expenses at the IRS rate where the privately funded placement was found to be

8   appropriate.  *See, e.g., S.L.*, 747 F.3d at 1160.  Defendants do not meaningfully argue that the IRS

9   mileage rates and Google Maps mileage calculations are improper subjects for judicial notice.

10  Rather, they argue that this is a belated request to introduce new evidence.  Docket No. 140, Defs.'

11  Reply at 18-19.  The Court finds that the IRS mileage rates from 2008 and 2009 and the Google

12  Maps mileage calculations, attached as exhibits to plaintiffs' request for judicial notice, are "not

13  subject to reasonable dispute because [they] can be accurately and readily determined from

14  sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201(b)(2).  The

15  Court GRANTS plaintiffs' request for judicial notice.  Having found that C.M.'s parents are

16  entitled to reimbursement for the privately funded Tomatis and Lindamood-Bell services in 2008

17  and 2009, reimbursement for transportation to and from these services is likewise proper.

18       However, the Court finds some errors in plaintiffs' calculations.  Plaintiffs based their

19  2009 Tomatis transportation calculations on the IRS mileage rate of $.585 rather than the correct

20  rate of $.55.  *See* Pls.' Req. for Judicial Notice, Ex. 1; Pls.' Mot. at 9 n.10.  The 2009 Tomatis

21  therapy sessions and reevaluation (sixteen trips total, at one round-trip, five miles each way)

22  therefore cost $88.00, rather than $93.60.  The total for Tomatis transportation is therefore

23  **$320.30** ($232.30 for services in the first half of 2008, and $88.00 for services in 2009).

24       As to the request regarding Lindamood-Bell services, plaintiffs appear to have under-

25  calculated their transportation costs.  The documents submitted show mileage of 8.1 miles each

26  way.[5]  M.M. Decl., Ex. 2; Pls.' Req. for Judicial Notice, Ex. 2.  The financial statements from

27  _____

28       [5] Plaintiffs appear to have mistakenly used the mileage of five miles each way that apply to the Tomatis therapy.  *See* Pls.' Mot. at 12 n.12.

United States District Court
Northern District of California

Lindamood-Bell Learning Processes show one diagnostic evaluation in October 2008, and eighty-seven therapy sessions in 2009.[6]  One round-trip transport for an evaluation in the second half of 2008 (IRS mileage rate of $.585) equals $9.48.  Two round-trip transports for eighty-seven therapy sessions in 2009 (IRS mileage rate of $.55) equals $1,550.34.  The Court finds that it is not unreasonable for the parents to have made two round-trips, to drop off and to pick up C.M. for his therapy sessions, given the relatively short one-way distance of 8.1 miles.  Therefore, plaintiffs are entitled to reimbursement of **$1,559.82** for the transportation they provided to and from Lindamood-Bell services.

In sum, the Court finds plaintiffs are entitled to the following reimbursements: **$545.00** for Dr. Loomos's evaluation provided in November 2007; **$6,573.00** for evaluations and Tomatis therapy provided by Dr. Swain between February 27, 2008, and February 10, 2009; **$7,652.90** for an evaluation in October 2008 and therapy from March through May 2009 from Lindamood-Bell Learning Processes; **$323.30** in transportation to and from Tomatis therapy and evaluations; and **$1,559.82** in transportation to and from Lindamood-Bell therapy and evaluations.

## CONCLUSION

For the foregoing reasons and for good cause shown, plaintiffs' motion for reimbursement is GRANTED and defendants' motion is DENIED.  Defendants shall reimburse plaintiffs **$16,654.02.**

**IT IS SO ORDERED**.

Dated:  July 27, 2016

SUSAN ILLSTON
United States District Judge

---

[6] Plaintiffs appear to have calculated this to total 160 round-trip drives rather than 175 (one round-trip for one evaluation and two round-trips for eighty-seven therapy sessions).  *See* Pls.' Mot. at 12 n.12.